

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT SALATTO, JR.,<br>PLAINTIFF | CIVIL ACTION NO.: 302 CV 230 (EBB) |
| Vs. | U.S.D.C. AT BRIDGEPORT |
| BRANFORD, TOWN OF; THOMAS W.<br>GRANTLAND ; PATRICK O'MALLEY;<br>DAVID ATKINSON; EACH RESPECTIVELY<br>SUED IN THEIR INDIVIDUAL CAPACITY<br>DEFENDANTS | MAJISTRATE JOAN G. MARGOLIS |

### PLAINTIFF'S AMENDED COMPLAINT WITH A JURY DEMAND

#### INTRODUCTION

Plaintiff brings this action seeking damages pursuant to 42 U.S.C. § 1983 against law enforcement officials and Town of Branford for deprivations of rights and protections secured via the Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution; 42 C.F.R. § 2; Article First §§ Seven, Eight, Nine, and Twenty of the Constitution of the State of Connecticut; Chapter 899 of Connecticut General Statutes; and the torts of assault, battery, libel, slander, invasion of privacy, negligence, and negligent or intentional infliction of emotional distress, actionable pursuant to Connecticut law, and hereby invoked under the supplemental jurisdiction of this Court.

Defendant officers had particular knowledge of plaintiff's serious medical condition and suicidal proclivity, yet willfully delayed and denied him access

## JURISDICTION

1) Jurisdiction of this Court is invoked pursuant to Titles 42 § 1983, 28 § 1331 (a), and 28 § 1343 (3) of the United States Code; The fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution as will more fully hereinafter appear; 42 C.F.R. 2; Article First §§ Seven, Eight, Nine, and Twenty of the Connecticut Constitution; C.G.S. Chapter 899; and the torts of assault, battery, libel, slander, invasion of privacy, negligence, and negligent or intentional infliction of emotional distress, hereby invoked under the supplemental jurisdiction of this Court.

## PARTIES

2) Plaintiff Robert Salatto is, and at all times mentioned herein has been, a citizen of the United States and a resident of Connecticut. He is presently incarcerated for misdemeanor criminal conduct at Osborn Correctional Center, P.O. Box 100, Somers, Connecticut 06071.

3) Defendant Thomas W. Grantland is, and at all times mentioned herein has been, employed by the Branford Police Department, 33 Laurel Street, Branford, Connecticut, 06405. He is hereby sued in his individual and official capacities.

4) Defendant Patrick O'Malley is, and at all times mentioned herein has been, employed as a patrol officer at the Branford Police Department, 33 Laurel Street, Branford, Connecticut, 06405. He is hereby sued official and individual capacities.

5) Defendant David Atkinson is, and at all times mentioned herein has been, employed as a patrol officer at the branford Police Department, 33 Laurel Street, Branford, Connecticut 06405. He is hereby sued in his individual and official capacities.

2

6) All defendants aforementioned act and have acted at all times mentioned herein under color of Connecticut law.

FACTS

7) Defendant Town of Branford was served with timely notice of forthcoming civil action on or about 28 January 2002 for events having alledgedly occurred during November of 2001, pursuant to C.G.S. § 7-465.

8) All conditions otherwise precedent to the filing of this action have occurred or have been performed.

9) Defendants O'Malley and Atkinson had qualified knowledge on November 15th, 2001 of plaintiff's significant overall medical instability and intermittent hospitilization for treatment on occasions during March 1st, up to and including November 15th, 2001.

10) Defendants O'Malley and Atkinson had information or belief on November 15th, 2001 that plaintiff was unde care of physician(s) and on, or probably on, duly prescribed medication(s) at any point from March 1st, up to and including November 15th, 2001.

11) Particularly, defendant O'Malley responded to a call while on duty in March of 2001 wherein plaintiff was found unconscious or substantially disorientated in a restaurant bathroom and subsequently transported by ambulance to emergency room for treatment of medical or mental health illness.

12) Defendant O'Malley had information or belief that plaintiff was ultimately admitted to hospital and remained for several days on said date, and had this information or belief on the date of November 15th, 2001.

13) Particularly, defendants O'Malley, Atkinson, and Grantland had knowledge that on November 2nd, 2001 plaintiff was transported by ambulance to emergency room for treatment directly from Brandford Police Department ("BPD") after he was released from custody on said date.

14) Either any or all of the defendants aforementioned had information or belief that plaintiff was ultimately admitted to hospital and remained for several days on said date for treatment of medical or mental health illness.

15) On November 15th, 2001, defendants O'Malley and Atkinson detained plaintiff for questioning in Branford, Connecticut. Plaintiff's father, Robert Salatto, Sr., was present for all or part of such detention prior to and/or until said defendnts arrested and transported plaintiff to BPD.

16) During said detention, prior to transport, plaintiff claimed in clear language that he was experiencing "chest pain," and "not feeling well."

17) Plaintiff requested that said defendants permit his father to furnish prescription medication for his use.

18) Said defendants ignored or denied such request.

19) Plaintiff requested directly that said defendants "call an ambulance."

20) Plaintiff's father additionally interjected and requested of said defendants to "call an ambulance."

21) Said defendants either expressly denied such requests or alternatively failed to provide medical evaluation or care of any kind.

22) Plaintiff continually pleaded with said defendants for provision of ambulance or medical personnel up to and including his arrival and detention at BPD.

23) Plaintiff screamed, pleaded, gasped, beeseeched, and importuned said defendants for provision of medical assistance or evaluation of "chest pain, immense pressure, dizziness, and nausea" throughout his detention at BPD. Plaintiff additionally collapsed as unconscious atleast once, and vomited atleast once during his detention.

24) Plaintiff was eventually permitted to use a telephone and reached his father with the call.

25) Plaintiff's father forthwith called defendant supervisor Grantland at BPD and indicated that plaintiff was "downstairs in lock-up languishing in pain." Additionally defendant supervisor was commanded therewith to provide medical personnel for evaluation of plaintiff and to permit a drop-off of prescription medications necessary to his well-being.

26) Defendant Grantland either expressly denied such requests or alternatively failed to provide medical evaluation or care of any form to the plaintiff.

27) Defendant Grantland ultimately became aware that plaintiff fashoned a noose out of his shirt and was using it to attempt suicide by hanging himself.

28) Numerous available BPD employees rushed to plaintiff and removed him, including defendant Grantland, whom was present.

29) Plaintiff was subsequently stripped of clothing and placed into a "safety-cell" by defendant Grantland, et al.

30) Medical evaluation of any kind was not provided by defendant Grantland or any other individual under his command, either in response to plaintiff's many initial claims of medical distress, or in conjunction with any injuries or

potential injuries sustained directly from his asphyixiation or suicide attempt, or in response to the telephone requests made by Mr. Robert salatto, Sr..

31) Defendants O'Malley and Atkinson ultimately had occasion to transport plaintiff to New Haven Correctional Center on November 15th, 2001, and in so doing they walked him through the BPD sallyport towards a police vehicle parked therein.

32) Plaintiff's hands were secured behind his back with handcuffs at the time of events referred to in paragraph thirty-one (31).

33) At some point while walking, during the events referred to in paragraph thirty-one (31) and while his hands were secured as stated in paragraph thirty-two (32), the plaintiff hesitated and requested of said defendants "a moment to catch [his] breath...from dizziness and chest pain."

34) Defendant Atkinson then responded to the plaintiff that he "ain't gonna [sic] get any medical care."

35) Defendant O'Malley, his hand on the plaintiff's shoulder, continued to push and shove him toward the parked police vehicle. Meanwhile, the plaintiff continued to request momentary pause from the defendants for medical reasons.

36) The defendants then jointly applied physical force to the plaintiff's peson, viz., they punched and kicked him; pushed, shoved, and slammed him; tripped him to the ground while he was handcuffed; picked his person back up and body-slammed him onto the police vehicle; and then threw him head first directly into the rear door of the vehicle.

38) The force applied to the plaintiff was such that during the course of events referred to in paragraph thirty-six (36), his left sneaker came free from his foot, flew through the air, and landed approximately twenty-five feet away, across the sallyport, as the defendants witnessed.

39) On November 15th, 2001, during the course of the plaintiff's detention, defendant O'Malley made several defamous utterances to the plaintiff's father, Robert Salatto, Sr., about the plaintiff, namely that the plaintiff was and is infected with a loathsome and communicable disease (AIDS).

40) Similarly, defendants O'Malley and Atkinson jointly made parallel statements to the plaintiff's then fiancee, Karen Holmes, that the plaintiff "has AIDS...is spreading AIDS through Branford...is dying of AIDS..." and that she "had better get tested."

41) Additionally, on November 15th, 2001, defendant Atkinson made written representations that the plaintiff "...is HIV positive," and circulated this writing to third persons.

42) The plaintiff is in fact, not infected with such loathsome disease.

43) Said defendants made these verbal and written representations callously and recklessly, without regard as to their truth, falsity, or validity. Further, the defendants had no good-faith basis from which to believe that the plaintiff is, or was, at any time infected as they so represented.

44) Further, defendant O'Malley made verbal utterances to a third person on or about November 20th, 2001, indicating that the plaintiff is "...a nut case...crazy...[and] schizophrenic" and additionally was admitted to a psychiatric

hospital for tretment.

45) During the events as referred to in paragraph Fourty-Four (44), said defendant arbitrarily divulged an array of specific and particular information regarding the plaintiff and his alledged "psychiatric hospitalization" including a purported date, place, time, and purpose.

46) Lastly, upon information and belief, any or all defendants herein mentioned additionally placed same information, including purported particulars of date, place, time, and purpose into a written record without regard to truth, falsity, or validity of any matter contained therein, and its intrinsically invasive nature or statutorial confidentiality notwithstanding.

LEGAL CLAIMS

FIRST COUNT

47) The acts and omissins of the defendants as described in paragraphs nine (9) through thirty (30), inclusive, chilled the plaintiff of rights and priviledges secured to him via the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

48) Whether the plaintiff's status was properly classifiable as a sentenced prisoner or alternatively as a pre-trial arrestee by virtue of his contemporaneous status as both a sentenced/revoked parole violator or merely a standard, unsentenced detainee, the acts and omissions of the defendants as referred to in paragraph Fourty-Seven (47) were violative as aforementioned when they indifferently failed to provide him access to medical personnel and interfered with treatment once prescribed.

49) The acts and omissions of the defendants as described in paragraph Fourty-Eight (48) similarly chilled the plaintiff of rights and priviledges secured to him via Article First §§ Seven, Eight, Nine, and Twenty of the Connecticut Constitution, hereby invoked under the pendent jurisdiction of this Court.

50) The acts and omissions of the defendants as referred to in paragraph Fourty-Nine (49) constituted the torts of negligence and negligent or intentional infliction of emotional distress pursuant to Connecticut law and invoked under the pendent jurisdiction of this Court.

SECOND COUNT

51) The acts and omissions of the defendants as described in paragraphs Thirty-One (31) through Thirty-Eight (38), inclusive, chilled the plaintiff of rights and priviledges secured to him via the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

52) In either classification status, the acts and omissions of the defendants as referred to in paragraph Fifty-One (51) were violative as aforementioned when they applied objectively unreasonable force to his person and/or subjected him to cruel and unusual punishment.

53) The acts and omissions of the defendants as referred to in paragraph Fifty-Two (52) similarly chilled the plaintiff of rights and priviledges secured to him via Article First §§ Seven, Eight, Nine, and Twenty of the Connecticut Constitution.

54) The acts and omissions of the defendants as referred to in paragraph Fifty-Three (53) similarly constituted the torts of assault, battery, negligence,

and negligent ingliction of emotional distress.

### THIRD COUNT

55) The acts and omissions of the defendants as described in paragraphs Fourty-Four (44) through Fourty-Six (46), inclusive, are violative of Title 42 § 2 of the United States Code.

56) The acts and omissions of the defendants referred to in paragraph Fifty-Five (55) are violative of Chapter 899 of the Connecticut General Statutes.

57) The acts and omissions of the defendants as referred to in paragraph number Fifty-Six (56) constitute the torts of invasion of privacy, negligence, and negligent or intentional distress under Connecticut law.

58) The acts and omissions of the defendants were violative as aforementioned when they arbitrarily divulged classified and confidential personal information about the plaintiff to third persons without the plaintiff's knowledge or consent.

### FOURTH COUNT

59) The acts and omissions of the defendants as described in paragraphs number Thirty-Nine (39) through Fourty-Six (46), inclusive, are violative of Article First §§ Eight, Nine, and Twenty of the Connecticut Constitution.

60) The acts and omissions of the defendants as referred to in paragraph Fifty-Nine (59) similarly constitute the torts of slander per se, libel per se, negligence, and negligent or intentional infliction of emotional distress under Connecticut law.

61) The acts and omissions of the defendants were violative as aforementioned when they uttered patently false verbal and writted representations about the

plaintiff, namely, that he was and is infected with a loathsome, communcable disease.

### FIFTH COUNT

62) The acts and omissions of the defendants as referred to in paragraphs number Fourty-Seven (47) through Fifty-Eight (58) are properly classified as willful and wanton actions committed by Town employees, outside of the scope of their employment, and additionally constitute violations of the plaintiff's Civil Rights and/or caused physical damage to his person.

63) Defendant Town of Branford is thereby liable for the actions of the natural defendants pursuant to Section 7-465(a) of the Connecticut General Statutes.

### RELIEF DEMAND

Wherefore, the undersigned plaintiff respectfully requests the following from this Honorable Court:

A) Accept all jurisdiction and pendent jurisdiction as requested herein or as otherwise deemed proper;

B) Order compensatory and punitive damages in an amount deemed just and equitable;

C) Grant Attorneys fees and costs of suit;

D) Order any other relief deemed just and equitable.

### JURY DEMAND

A trial by jury is herewith requested

RESPECTFULLY SUBMITTED,

THE PLAINTIFF.

BY: _____

Robert Salatto, Jr.
Pro Se Plaintiff
Post Office Box 100
Somers, Connecticut 06071

## CERTIFICATION

This is to certify that one copy of the foregiong instrument was mailed to the hereinuder parties of record by depositing it with the correctional administrative staff on this the 17th day of the month of March, in this the year of Two Thousand and

John J. Bradshaw, Esq.
Howd & Ludorf
65 Wethersfield Ave
Hartford, Ct

BY: [signature]