**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

**ROBERT F. SALATTO, JR.**       :    **NO. 3:02 cv 0230 (EBB) (JGM)**
    **Plaintiff**

**VS.**                                               :

**TOWN OF BRANFORD, ET AL.**  :    **AUGUST 25, 2006**
    **Defendants**

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENT</u>**

**Summary.** This memorandum, provided with permission of the Court by newly appearing counsel for plaintiff, is intended to supplement rather than supplant the Opposition previously filed by the plaintiff <u>pro</u> <u>se</u>.    The record discloses that Mr. Salatto has aggressively pursued his case, has studied and referenced the relevant law, and, most importantly, has carefully documented the delinquencies of the defense.

I have attempted to confirm the content of the pleading record and Mr. Salatto's representations, further explore relevant law, apply an independent and dispassionate assessment distinct from the plaintiff's understandable righteous indignation, and attempt to capture the essence of the argument for denying the motion to vacate the default judgment.

As such, in summary I suggest that what the record demonstrates is an inexplicable multi-year pattern of willful neglect by a major law firm, with but a

**ORAL ARGUMENT <u>IS</u> REQUESTED
TESTIMONY IS <u>NOT</u> REQUIRED**

mere perfunctory attempt at justification.  It is as if Mr. Salatto, who was clearly viewed with a degree of contempt by the Branford Police, as demonstrated by their own records and admissions, was also dismissed in the course of this litigation as something of a nuisance, a metaphorical gnat to be flicked off the judicial "sleeve" as one whose rights should be similarly viewed and treated with less than conscientious regard by the Court.

But long ago the judiciary was reminded that honoring the rights of even those society perceives as among the lowliest is an element of a just society. **1**

**Nature of this lawsuit.**    This lawsuit alleges that the plaintiff was (A) subjected to unreasonable physical force, (B) denied medical treatment on several occasions, (C) given inadequate protective supervision while in custody resulting in his attempt to commit suicide, and (D) on a number of occasions subjected to the false and unauthorized spreading of rumors that he was HIV positive and/or suffered from AIDS.  The complaint also alleges a failure of the Town of Branford to adequately train and supervise its police officers.

Since the undersigned has just recently entered an Appearance and the case was previously handled pro se it is my understanding that the Court may yet allow further amendment of the Complaint.  Therefore, I will not confine myself to the precise legal claims made by the plaintiff but also reference others that I believe might fairly be encompassed within the factual wrongs committed.

_____

**1**    Gideon v. Wainwright, 372 U.S. 335, 344-45, 83 S.Ct. 792, 796-97, 9 L.Ed.2d 799 (1963).

**Relevant law. 2**      A court may set aside a default "[f]or good cause shown," **3**   and as to a judgment by default, "may likewise set it aside in accordance with Rule 60(b)." **4**      Under Rule 60(b)(1) a court may vacate a default judgment for **"reasons [of] mistake, inadvertence, surprise, or excusable neglect." 5**

Setting aside a default judgment: requires evaluation of three factors:  "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).

---

**2**      In asking this Court to deny the defendants' Motion to Vacate Default Judgment we are aware of the severity of a default judgment. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Securities & Exchange Comm'n v. Management Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975); Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (2d Cir. 1964).   "[D]ismissal is "a harsh remedy to be utilized only in extreme situations."   Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995) (citations and internal quotation marks omitted).   "Dismissal 'is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'  *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (citation and internal quotation omitted).  Ordinarily it is imposed only after notice that such a sanction might result from a litigant's conduct.  *See Simmons v. Abruzzo*, 49 F/3d 83. 88 (2d Cir. 1995); *Bobal* v. *Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991)." Marfia v. T. C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 253 (2d Cir. 1996) (italics in original).

**3**     Fed. R. Civ. P. 55(c)

**4**     Fed. R. Civ. P. 60(b).

**5**     Fed. R. Civ. P. 60(b)(1).

"Other relevant factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  Enron Oil Corp. v. Diakuhara, supra, 10 F.3d at 96 (citation omitted).

Also, "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, . . . , because the concepts of finality and litigation repose are more deeply implicated in the latter action."  Enron Oil Corp. v. Diakuhara, supra, 10 F.3d at 96 (citation omitted).  **6**

_____

**6**     There are many instances in which the Second Circuit Court of Appeals has upheld defaults or default judgments based in part on the imputation of errors of counsel to the client.

Securities and Exchange Commissioner v. McNulty, 137 F.3d 732, 738-739 (2d Cir. 1998) (the defaulted person, a business man who together with others had raised $78 million through various public and private offerings of securities in connection with several corporations controlled by a codefendant, was accused with the others of illegally diverting monies); Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-244 (2d Cir. 1994) (commercial banks); American Alliance Insurance Co. v. Eagle Insurance Co., 92 F.3d 57, 60-61 (2d Cir. 1996) (the filing mistake was by a clerk working for counsel); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) (failure of attorney and plaintiff to prosecute; also, obstructionism during discovery); Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1980) (per curiam), cert. denied, 439 U.S. 1117, 99 S.Ct 1023, 59 L.Ed.2d 76 (1979) (the most prominent delinquency of counsel was ten (10) month delay in moving to vacate dismissal; counsel also misstated actions of the Trial Judge's law clerk); United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976) ("Cirami I") (truck transportation company; delinquency of attorney  inadequately explained; federal income tax deficiencies of nearly $300,000; failure of attorney to file opposition to motion for summary judgment.  See also, Flax v. Koegel, et al., 504 F.2d 702 (2d Cir.1974) (corporation and its president accused of fraud in the sale of corporate debentures); Gucci America, Incorporated, Guess?, Inc. v. Gold Center Jewelry, et al., 158 F.2d 631 (2d Cir. 1998).

## Reasons for denying the motion to vacate the default judgment.

### The proffered explanation is perfunctory, conclusory and illogical.

The defense has filed two affidavits of their individual counsel of record, Attorney John J. Radshaw, III.   The two affidavits, respectively dated February 2, 2006 and February 7, 2006, are nearly identical.

In both affidavits it is proffered in particular part that "[s]ometime in the summer months of 2005, the defendants' legal file was sent into closed file storage by mistake and the file was marked closed" [paragraph 4], "[a]s a result pleadings associated with this file were not properly forwarded to the undersigned" [paragraph 5], "[o]n February 1, 2006, the undersigned received a number of pleadings filed by the plaintiff . . . the docket was reviewed and the undersigned was made aware of the numerous pending motions, including the pending motion for default" [paragraph 6], "[t]he file was closed along with an adjacent, larger file, and the entirety was sent to storage" [paragraph 8], "[c]oncerning the ruling on the motion for default, the defendants' counsel cannot account for not receiving the notice of the prior order on the motion for default" [paragraph 11], "[w]hether the e-mail notice was consumed by a spam filter or other electronic issue is under investigation" [paragraph 11], and "[w]e have had prior e-mail problems about that time" [paragraph 11].

Defense counsel characterizes the foregoing explanation as presenting "administrative procedural error" and therefore excusable.

-5-

**Defendants' delinquencies may fairly be characterized as "willful."**

A panel of the Second Circuit Court of Appeals considered the various applications of the standard of "willfulness" in a number of federal judicial circuits. That panel, including then Chief Judge Jon O. Newman, Circuit Judge Barrington D. Parker, Jr., and District Court Judge Eugene H. Nickerson, sitting by designation, concluded in relevant part as follows.

"[T]his court has recently implied that it will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error."  American Alliance Insurance Co., Ltd. v. Eagle Insurance Company, 92 F.3d 57, 60 (2d Cir. 1996) (citation omitted).  **7**

". . . Rule 60(b) expressly contemplates that some types of 'neglect' are 'excusable.'  The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not.   At the same time, we recognize that the degree of negligence in precipitating a default is a relevant factor to be considered, along with the availability of a

_____

**7**     "In Brien v. Kullman Industries, Inc., 71 F.3d 1073, 1078 (2d Cir. 1995), we concluded that the defendant had not willfully defaulted where he had failed to file an answer because he was mistaken as to the appropriate timing for filing the answer and because he had received the incorrect docket number from the clerk's office."     American Alliance Insurance Co., Ltd. v. Eagle Insurance Company, 92 F.3d 57, 60 (2d Cir. 1996) (citation omitted).  The panel in Brien included Circuit Judges Miner, Mahoney, and Cabranes. However, in Brien the panel also concluded that the plaintiff insurers did not argue that they would be prejudice by setting aside the default judgment, and there was a very careful analysis leading to the conclusion that the defendant had a meritorious defense.

". . . Rule 60(b) expressly contemplates that some types of 'neglect' are 'excusable.'  The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not.   At the same time, we recognize that the degree of negligence in precipitating a default is a relevant factor to be considered, along with the availability of a meritorious defense and the existence of prejudice, in determining whether a default judgment should be vacated and whether failure to do so exceeds allowable discretion. . . .   Gross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief."

American Alliance Insurance Co., Ltd. v. Eagle Insurance Company, supra, 92 F.3d at 61 (2d Cir. 1996) (citation omitted).

What is presented by the defendants' explanatory affidavits studiously omits much that is relevant and critical.  The complete and undisputed record of communications directed to defense counsel at his law firm evidences a systematic and deliberate dismissal of the many notices, pleadings, orders and letters received by the defense that should have alerted counsel to any "administrative" problems that existed and the need for immediate investigation to clarify and rectify the situation.   The sheer volume of such communications could not have been overlooked or dismissed in "good faith."

I here quote briefly from Plaintiff's Memorandum Of Law To Incorporate And Supplant Plaintiff's Prior Memorandum In Opposition To The Defendant's Motions To Vacate Judgment, because it so succinctly summarizes and

-7-

characterizes the heart of the delinquencies in this case.

>.  .  .    [T]he defendants have ignored some 75 separate
> contacts, including some 50 discovery requests and motions,
> several judicial orders commanding them to produce discovery
> materials, and several judicial orders commanding them to address
> this action or suffer judgment by default.  .  .    Counsel for the
> defendants has additionally ignored some 15 separate letters from
> the undersigned addressed to him at his law office.  .  .    Counsel
> has additionally ignored 6 separate letters addressed to him, as
> well as to corporation counsel for the Town of Branford, forwarded
> to them from the Branford Clerk's Office in response to numerous
> inquiries made by your plaintiff about this action. .  .    These letters
> were sent during the exact time that counsel purports to have
> received no communication regarding this action.
>
> Counsel expects this court to believe that, somehow, written
> materials from only this case were diverted to storage, and,
> somehow, E-mail and judicial orders from only this case were
> consumed by a computer filter.    Accordingly to counsel, he
> fortunately began receiving communications and legal orders again
> on the very day that his court entered a judgment of default.
> [February 2, 2006 Affidavit]   Id at 1; see also counsel's affidavit
> dated Feb. 7, 2006 at 1. . . .

[Plaintiff's Memorandum Of Law To Incorporate And Supplant Plaintiff's Prior Memorandum In Opposition To The Defendant's Motions To Vacate Judgment By Default, at pages 2 through 4, dated March 24, 2006, file stamped March 28, 2006.]

Mr. Salatto further supported the foregoing referenced Memorandum with a careful itemization of the pleadings and court orders ignored, and copies of some of the correspondence referenced.

The undersigned has independently reviewed the various pleadings and other communications between the plaintiff and defense counsel in order to try to determine how the delinquencies might have come about.

I believe it is most prudent to refer to pleadings only as referenced in the Docket Entries since it appears some of the dates on pleadings and certificates of service may differ from the date of the docket entry.

Also, I have referenced only those Docket Entries I believe are most significant, not all that are relevant to the consideration of the defendants' Motion for Reconsideration.

In the Summer of 2004 there was a flurry of correspondence between the plaintiff and defense counsel attempting to resolve outstanding discovery matters, in particular defense counsel's objections to a number of plaintiff's discovery requests and efforts to schedule the deposition of plaintiff's father, Robert Salatto, Sr.  Plaintiff's letter of July 20, 2004 and July 25, 2004, Defense counsel's letters of June 9, 2004, July 1, 2004, August 27, 2004, August 30, 2004

and August 31, 2004.  That deposition was conducted by defense counsel on September 2, 2004.   There followed letters to Defense counsel dated October 12, 2003, November 7, 2004, and November 24, 2004.

There then followed a series of largely procedural motions, and then a number of plaintiff's motions to compel defense compliance with discovery requests (Plaintiff's  Motion to Compel Discovery Responses, Document No. 61, Plaintiff's   Motion for More Particular Statement of Defendant's Affirmative Defenses, Document No. 63, Plaintiff's Motion to Compel Disclosure of Specific Items of Work Product, Document No. 65, Plaintiff's Motion to Compel, Document No. 66, Plaintiff's Motion for Compelled Compliance, Document No. 68, Plaintiff's Motion for Sanctions, Document No. 69.

The defense then sought and received a series of extensions of time in which to comply with discovery requests.  (Electronic Order granting until March 1, 2005, Document No. 70.)

When the new deadline was not complied with plaintiff filed additional motions to compel compliance.   (Plaintiff's Motion to Compel Discovery Responses, Document No. 74, Plaintiff's Motion to Compel Discovery Producdtion, Document No. 75, Plaintiff's Motion to Compel Discovery Production, Document No. 76, Plaintiff's Motion for Judicial Sanctions).

On June 3, 2005 the Court, by Order of the Magistrate-Judge issued a Ruling and Order largely denying the plaintiff's motions for failure to document efforts to attempt to reach resolution directly between the plaintiff and defense

-10-

counsel, Document No. 80.   New deadlines were also established, including until August 3, 2005 in which to complete discovery.

In early July 2005 the plaintiff filed a Motion to Compel, Document No. 83, a Motion for Partial Summary Judgment, Document No. 85, a Motion to Strike, Document No. 86 and a Second Motion to Strike, Document No. 87, and in August 2005 plaintiff filed a Motion for Judicial Notice, Document N o. 88, a Motion to Exclude as a Sanction, Document No. 89, a Motion to Compel Production, Document No. 90, a Motion for Discovery Sanctions, Document No. 91, a Second Motion for Discovery Sanctions, Document No. 92, and a Motion for Default Judgment, Document No. 95.

The plaintiff also received correspondence related to this lawsuit from the Town of Branford, respectively dated July 5, 2005, August 30, 2005, October 5, 2005 and December 29, 2005, all significantly copied to both defense counsel and the Town Attorney.

The plaintiff also wrote to defense counsel in January and August 2005.

By Ruling and Order of January 3, 2006, the Magistrate responded to the various motions, most significantly granting the Motion for Default.

The plaintiff then filed a series of other motions in late January, in particular a Motion for Default Judgment as to the Town of Branford, Patrick O'Malley and David Atkinson, Document No. 108.

By Ruling and Order dated January 31, 2006, the Magistrate addressed various of the motions, Document No. 109.

-11-

In early February 2006 the plaintiff filed additional motions.

By Ruling and Order of February 2, 2006, the Hon. Ellen B. Burns addressed many of the outstanding motions, most significantly granting Document No. 108, i.e., the Motion for Default Judgment as to the Town of Branford, Patrick O'Malley and David Atkinson.  Document entries No. 113 and 114.

About a week later the defense filed a Motion for Reconsideration of the granting of the Defaults and the Default Judgment, Document Nos. 115, 116 and 122.

The plaintiff shortly thereafter filed an Opposition to the Motions for Reconsideration, Document No. 134 and 136, followed by plaintiff's Supplemental Opposition Memorandum filed on March 28, 2006, Document No. 147.

Again, I have referenced only those Docket Entries I believe are most significant, not all that are relevant to the consideration of the defendants' Motion for Reconsideration.

We believe it is particularly significant that since Mr. Salatto's March 2006 filing the defense has not even made an effort to respond and dispute the factual history of communications to defense counsel in this case, a virtual admission of Mr. Salatto's summary of the delinquencies.  Nor has the defense disputed the logic of Mr. Salatto's analysis.

-12-

In other words, as Mr. Salatto so aptly emphasized in the foregoing referenced opposition to vacating the default judgment, the sheer volume of communications directed to defense counsel at his office during the very material periods of time is the most objective evidence,  and it is also the strongest refutation of the claim that the defense delinquencies were made in "good faith."

Giving the maximum benefit to the defense, it is conceivable that defense counsel *might* not have received *every* single <u>pro</u> <u>se</u> pleading, *every* single letter, or *every* single item of correspondence, but it is *in*conceivable that none or most were not received by counsel.    Thus, assuming *arguendo* the accuracy of the claim that the case was misfiled and mistakenly "closed," it is also inconceivable that diligent counsel or diligent staff would simply disregard the many communications without looking at the content, asking the most basic of logical question, <u>i.e.</u>, if the case is "closed" why do we continue to receive these numerous communications, conducting a basic and thorough investigation, and going forward establishing a 'fail safe' backup system for this case.

The defense delinquencies in this case cannot be accidental or inadvertent or negligent.   "Deliberate disregard" or "willful ignorance" are more accurate characterizations.

Moreover, even if one were to disagree with our contention that there was a deliberate disregard of the plaintiff's many efforts to have the defense address his case, the evidence alternatively demonstrates a clear "absence of minimal internal procedural safeguards" which the Second Circuit has cited as not

-13-

establishing "excusable neglect."  American Alliance Insurance Co., Ltd. v. Eagle
Insurance Company, supra, 92 F.3d at 61.

In sum, what is evidenced is not a mere "administrative" error but rather
systematic disinterest in the obligations imposed by this lawsuit, evidence that
this pro se prisoner lawsuit was fundamentally ignored and dismissed as not
worthy of serious or conscientious attention.

Additionally, at the very least diligence would have called for careful
monitoring of the progress of this case once the 2006 pleadings were received,
the "administrative" problem discovered, and the Motion for Default and
defendants' Objection layed before the Court.


**The defendants have not met their burden of demonstrating a
meritorious defense.**

Since the undersigned has just recently entered an Appearance and the
case was previously handled pro se it is my understanding that the Court may yet
allow further amendment of the Complaint.  Therefore, in this section I will not
confine myself to the precise legal claims made by the plaintiff but also reference
others that I believe might fairly be encompassed within the factual wrongs
committed against him.    Also, in some instances further discovery greater than
that done by the plaintiff pro se may be necessary.

Also, we emphasize that it is the defendants' burden to demonstrate a
meritorious defense, not that of the plaintiff to demonstrate the absence of a

-14-

meritorious defense.    Nevertheless, while reserving our right to respond should the defendants belatedly attempt to offer more than their one sentence conclusory claim of a meritorious defense, we will briefly address the issue of the absence of a meritorious defense.

"A defense is meritorious if it is good at law so as to give the factfinder some determination to make."  <u>American Alliance Insurance Co., Ltd.</u> v. <u>Eagle Insurance Company</u>, 92 F.3d 57, 61 (2d Cir. 1996) (citation and internal quotation marks omitted).

"In connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense. . . .  'The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" <u>Pecarsky, et al.</u> v. <u>Glaxiword.com Limited, et al.</u>, 249 F.3d 167 (2d Cir. 2001), citing and quoting from <u>Enron Oil Corp.</u> v. <u>Diakuhara</u>, 10 F.3d 90, 98 (2d Cir. 1993) (citations omitted).

In this instance the effected defendants have not even made an effort to demonstrate a "meritorious  defense."

Indeed, the only proper characterization of the defendants' reference to their supposed defense is a perfunctory single sentence:  "Most of all, as police officers, these defendants are protected by governmental immunity; this theory, along with the contested issues of liability and damages establish that

meritorious defenses are present."

When members of an experienced and major firm offer such a pitiful proffer it can only mean that they simply do not take their obligations to the Court seriously and they assume a virtual entitlement to having the case reinstated.

Furthermore, as stated above, while it is not our responsibility to affirmatively demonstrate the absence of a meritorious defense, we will briefly address why the defendants cannot in good faith even attempt to claim meritorious defenses.  Also, again, in some instances further discovery greater than that done by the plaintiff pro se may be necessary.

Statements that Mr. Salatto is HIV positive or has AIDS – Constitutional and statutory violations. (See other sections of this memorandum, infra, for various state common law violations for disclosure of information about allegedly being HIV positive or having the AIDS virus, e.g., state law invasion of privacy and/or libel and/or slander, intentional infliction of emotional distress, negligent infliction of emotional distress.)

Mr. Salatto has alleged that the individual defendants told a number of other persons that he was HIV positive and/or had the AIDS virus, and otherwise told them he suffered from related conditions, the officers often using particularly egregious language in such communications.

Mr. Salatto also denies that he is HIV positive or has the AIDS virus.

Certain defendant's only claimed defense is, apparently, that (A) Mr. Salatto had made this or a similar claim the past, and (B) in a single written

-16-

instance their communications were privileged.

An individual has a constitutional right to privacy of information regarding his or her medical condition, including whether or not such person is HIV positive or has contracted the AIDS virus.  Doe v. City of New York, et al., 15 F.3d 264, ___ (2d Cir. 1994); Doe v. Coughlin, 697 F.Supp. 1234, 1237 (N.D.N.Y. 1988) (recognizing that even family members may abandon the person and the discrimination accompanying such public dissemination may cause innumerable problems).

Additionally, at least in Connecticut, an individual also has a statutory right to privacy of such information except under the specific circumstances and conditions provided in relevant the statutes.

Chapter 368x of the Connecticut General Statutes sets forth a detail regime for, inter alia, protection and limited disclosure of HIV or AIDS related information regarding a person.

Connecticut General Statutes, Section 19a-583 sets for "[l]imitations on disclosure of HIV-related information."  None the circumstances for authorized disclosure set forth in that statute were present in this instance.  [A copy of the statute is appended hereto.]

Connecticut General Statutes, Section 19a-584(a) authorizes only "[a] public health officer," as defined in subsection (c) of the statute, to "inform or warn partners of an individual that they may have been exposed to HIV," and then only in specific circumstances and under specific conditions.

-17-

None of the individual defendants in this lawsuit is a "public health officer," nor were any of the specific statutory circumstances present or the specific statutory conditions present.

Connecticut General Statutes, Section 19a-584(b) authorizes only "[a] physician" to "warn or inform  a known partner of a protected individual," as that term is defined in Section 19a-581(7) of the Statutes, then only in specific circumstances and under specific conditions, or "may disclose confidential HIV-related information to a public health officer for the purpose of informing or warning partners of the protected individual that they may hae been exposed to HIV" under specific conditions.

Additionally, Connecticut General Statutes, Section 19a-590 expressly provides a State law private cause of action for injuries caused by anyone who "willfully violates" those laws.   In this context "willful" requires only "a knowing disclosure of confidential HIV-related information."   Doe v. Marselle, et al., 236 Conn. 845, 860, 675 A.2d 835, 842 (1996).

None of the individual defendants in this lawsuit is a "physician," nor were any of the specific statutory circumstances present or the specific statutory conditions present.

Connecticut General Statutes, Section 19a-585 also provides strict requirements when "confidential HIV-related information is disclosed."   Even perchance that any of the individual defendants was authorized to disclose such alleged information about Mr. Salatto, none of those requirements was followed.

-18-

None of the circumstances presented in this case fit within any exception to nondisclosure.

Nor could the individual defendants rely on the defense of immunity, absolute or qualified. **8**

Given the foregoing statutes, initially enacted in 1989, and the referenced federal court rulings since the late 1980's and early 1990's, the individual defendants cannot fairly claim that the relevant law was not clearly established.

Nor can the individual defendants claim that other reasonable police officers could reasonable have disclosed such information in the circumstances.

Denial of medical assistance – constitutional violation. (See other sections of this memorandum, infra, for state law violations for failure to provide medical care e.g., state law invasion of privacy and/or libel and/or slander, intentional infliction of emotional distress, negligent infliction of emotional distress.)

Mr. Salatto claims that in the course of being arrested and while in custody he suffered physical distress including, but not limited to, severe chest pains, tightening and clubbing and pressure within his chest, shortness of breath, dizziness and vomiting. [Amended Complaint, paragraphs 8 through 13.]

The defendants' respective answers to interrogatories do not dispute that Mr. Salatto claimed such distress.

_____

**8**    Contrast, Barese v. Clark, 1999 WL 7134878 (Conn. Super.), where the disclosure was made by a State Court prosecutor at a criminal case sentencing and in circumstances justifying the prosecutor's absolute immunity.

In fact, Defendant David Atkinson's Answers to Interrogatories expressly states that he "recalls that the plaintiff requested medical attention while in the custody of the Branford Police Department on November 15, 2001" and that "[t]he plaintiff claimed he had chest pain."  [Answer to Interrogatory to David Atkinson, No. 6.]

Also, General Order 87-3 of the Branford Police Department, effective October 26, 1987, expressly provides that

"Anytime a prisoner appears ill or the officer feels it necessary for medical attention, members of the ambulance / rescue squad shall be immediately notified and information entered on the detention car."  [Section II.B.g.]

To the extent that provision allows such uncircumscribed discretion to non-medical personnel as the defendants to make medical judgments the Town should be liable for a policy that fails to provide adequate medical assistance.

To the extent the individuals ignored the pleas of Mr. Salatto for medical assistance for chest pain, difficulty breathing, dizziness and nausea and the other complaints listed they should be individually liable.  **9**

Mr. Salatto was clearly an identifiable person who would suffer injury if the police failed to provide reasonable medical assistance.

_____
9    The situation is distinct from that where the Connecticut "Good Samaritin" statute might provide immunity for the <u>quality</u> of the assistance provided. Connecticut General Statutes, Section 52-557b(b); <u>Hansen</u> v. <u>Mohegan Fire Co., Inc.</u>, 2001 WL 1249945.   In contrast, here no assistance whatsoever was provided.

Instead, at most the officers claimed that they believed his complaints were not true, and instead were a subterfuge to avoid being kept in jail.

". . . The rights of one who has not been convicted are protected by the Due Process Clause; and while the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause [of the Fourteenth Amendment to the U. S. Constitution] to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner. . . . Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need. . . ." Weyant, et al. v. Okst, et al., supra, 101 F.3d 845, 856 (2d Cir. 1996) (citations omitted) (bracketed portion added).

" Deliberate indifference, in this context, may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. . . .   Thus, in order to establish deliberate indifference, a plaintiff must show 'something more than mere negligence'; but proof of intent is not required, for the deliberate-indifference standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.' . . . ."   Weyant, et al. v. Okst, et al., supra, 101 F.3d at 856 (2d Cir. 1996) (citations omitted).

The Weyant court then adopted an "objective standard, requiring

-21-

determination of what the official knew or should have known. . ." in order to assess whether the defendant acted with "deliberate indifference." <u>Weyant, et al.</u> v. <u>Okst, et al.</u>, <u>supra</u>, 101 F.3d at 856 (citations omitted).  **10**

    <u>Failure to provide adequate security to prevent attempt at suicide. –</u> <u>Constitutional violation.</u>

    The Amended Complaint alleges that the defendants had "particular knowledge, through their prior dealings with the plaintiff, that he was under the care of a physician, on medication, and had been recently hospitalized for major depression and a suicide attempt, . . . [yet] ignored clear and specific police orders to dispossess him of his belt, necktie, and shoelaces while detained" . . . and that "[u]ltimately, the plaintiff did, in fact, attempt suicide by hanging himself with one or more of these items."  {Amended Complaint, paragraphs 15, 16.]

    Even the Town of Branford officially recognizes an obligation to take reasonable precautions to prevent the suicide of one taken into custody by tge town's police officers.  But once again, broad and unjustified discretion is left to nonmedical personnel both as to determining the need for such preventive steps and in the steps to be taken.

    Thus, General Order 99-1, in effect at the time of the November 2001 incidents in question but since superseded, provides only the following:

---

**10**    The denial is one of substantive due process.  See <u>County of Sacramento, et al.</u> v. <u>Lewis, et al.</u>, 523 U.S. 833, 834, 118 S.Ct. 1708, 140 L.Ed.2d 1043, (1998), citing in turn, <u>Revere</u> v. <u>Massachusetts Gen. Hospital</u>, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

1.  Supervision of Detainees must be continuous.  When the Department is housing any arrestee, the monitoring camera(s) shall remain on.

2.  The Shift Commander shall, on an hourly basis visit, or cause a visit to detentin to personally judge the welfare of each detainee.

. . .

6.  The Department Suicide Prevention Form shall be filled out for every detainee regardless of how brief the detention may be.  (The suicide prevention form is not an interview.  It is a questionnaire of information officers have received by history or intelligence from the investigation).

7.  The Suicide Prevention Form must be reviewed by the officer in charge.  Whenever he/she finds information to cause a prudent person to be concerned, he/she will take any steps necessary to prevent injury or the opportunity for injury to the detainee.

[General Order 99-1 of the Branford Police Department, respectively Sections II.D.1, 2, 6 and 7.]

This issue also raises a claim of denial of substantive due process. However, there is a divergence as to whether the necessary standard of deliberate indifference is establish by objective or subjective evidence.  Liscio v. Warren, 901 F.2d 274, 2776-77 (2d Cir. 1990); Dinnerstein v. United States, 486 F.2d 34, 36 (2d Cir. 1973); Valentin v. Murphy, et al., 95 F.Supp.2d 99m 104 (D. Conn. 2000); Hanrahan v. City of Norwich, 959 F.Supp. 118, 122 (D.Conn. 1997); compared with  Weyant, et al. v. Okst, et al., supra, 101 F.3d at 856 (citations omitted).

Excessive force, assault, battery.   We acknowledge that the claims of excessive force, assault and battery usually raise factual issues.   Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Martyn v. Donlin, 148 Conn. 27, 166 A.2d 856 (1961); Schmeltz v. Tracy, 119 Conn. 492, 495-96, 177 A. 520 (1935); Lentine v. McAvoy, 105 Conn. 528, 136 A. 76 (1927); Welch v. Durand, 36 Conn. 182, 184, (1869), although neither violence nor actual damage is necessary to constitute a battery.   See Criscuolo v. Shaheen, 46 Conn. Supp. 53, 736 A.2d 947 (1999), and Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, at page 10.

But in this case those claims are relatively last in significance of wrongdoing and injury.

Intentional Infliction of Emotional Distress.

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  Frank DeLaurentis vs. City of New Haven, et al., 220 Conn. 225, 266-67, 597 A.2d 807 (1991)(internal quotion marks omitted); Petyan vs. Ellis, 200 Conn. 243, 253, 254 n.5, 510 A.2d 1337 (1986).

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an

average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  1 Restatement (Second), torts Sec. 46, comment (d), p. 73 (1965). **11**

Communicating to another person that Mr. Salatto is HIV positive or has the AIDS virus, particularly when such a communication is false and in direct violation of a statutory mandate, is certain outrageous,  The legislative history of the referenced Connecticut statute limiting disclosure of such information sets forth in great detail the reasons for the statute including the "widespread discrimination against the AIDS victim . . . ."  Doe v. Marselle, et al., 236 Conn. 845, 852, 675 A.2d 835, 839 (1996) (internal quotations omitted).

Failing to provide medical care when requested is similarly outrageous.

Failing to provide the most basic of suicide prevention oversight, and then not providing adequate care once such an attempt has occurred, is equally outrageous.

_____

**11**   In order for the plaintiff to prevail on her claim of Intentional Infliction of Emotional Distress she must prove four elements.  First, the plaintiffs must prove that the defendant intended to inflict emotional distress, or that the defendant knew or should have known that emotional distress was a likely result of his conduct.  Second, the plaintiffs must prove that the conduct of the defendant was exteme and outrageous.  Third, the plaintiffs must prove that the defendant's conduct was the cause of the plaintiff's distress.  Fourth, the plaintiffs must prove that the emotional distress sustained by the plaintiffs was severe.    Appleton v. Board of Education of the Town of Stonington, et al., 254 Conn. 205, 210-211, 757 A.2d 1059 (2000).  In contrast, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for  an action based upon intentional infliction of emotional distress."  Mellaly v. Eastman Kodak Co., 42 Conn.Supp. 17, 19, 597 A.2d 846 (1991).

Utilizing unreasonable and unjustified physical force is clearly outrageous.

Additionally, the failure of the Town to provide adequate training, supervision and guidance for any of the foregoing referenced acts or omissions is outrageous.

<u>Negligent infliction of emotional distress.</u>

One may be liable for negligent (unintentional) infliction of emotional distress if the defendant knew or should have known that his conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.    <u>Morris</u> v. <u>Hartford Courant Company</u>, 200 Conn. 676, 513 A.2d 66 (1986); <u>Montinieri</u> v. <u>Southern New England Telephone Co.</u>, 175 Conn. 337, 345, 398 A.2d 1180 (1978).

Again, the likelihood that extreme emotional distress, of the type that might result in illness or bodily harm, should be foreseen by an officer communicating to another person that Mr. Salatto is HIV positive or has the AIDS virus, particularly when such a communication is false and in direct violation of a statutory mandate,

Failing to provide medical care when needed and requested is certainly outrageous.

Failing to provide the most basic of suicide prevention oversight, and then not providing adequate care once such an attempt has occurred, is equally outrageous.

Utilizing unreasonable and unjustified physical force is clearly outrageous.

-26-

Additionally, the failure of the Town to provide adequate training, supervision and guidance for any of the foregoing referenced acts or omissions is outrageous.

Slander.  In Connecticut, "[c]harging a person with an existing loathsome, contagious disease" constitutes slander per se.  Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, at page 412, citing Prosser and Keeton on Torts (5th Ed.), Section 112.

Libel.  In Connecticut libel per se is an issue of law for the Court and must be determined from the face of the publication itself.   Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, supra, at page 408, citing Lega Siciliana Social Club, Inc. v. St. Germaine, 77 Conn.App. 846, 825 A.2d 827 (2003), cert. denied, 267 Conn. 901, 838 A.2d 210 (2003); Proto v. Bridgeport Herald Corp., 136 Conn. 557, 565, 72 A.2d 820 (1950), Charles Parker Company v. Silver City Crystal Co., 142 Conn. 605, 116 A.2d 440 (1955). The written imputation of what many would consider a loathsome condition such as being HIV positive or having the AIDS virus is certainly such a libel per se. The instance of such writing in this case is not privileged under the specific statutes that govern the disclosure of such information, cited above.

Common law invasion of privacy.  "A tort action will lie in Connecticut for an invasion of the right of privacy, . .. .  The right to privacy is invaded if a person unreasonably and seriously interferes with another's interest in not having his affairs known to others . . . .  Liability exits if the conduct was such that the doer

would have realized that it would be offensive to persons of ordinary sensibilities.

. . ." Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, supra, at page 444-445, citing, inter alia, Goodrich v. Waterbury-Republican, 188 Conn. 107, 448 A.2d 1317 (1982);  Bennett v. Connecticut Hospice, Inc., 56 Conn. 134, 138, 741 A.2d 349 (1999), Korn v. Rennison, 21 Conn. Sup. 400, 403, 404, 156 A.2d 476 (1959).

Again, the federal cases cited above regarding the constitutional right to privacy applied to disclosure of allegations concerning one's allegedly being HIV positive or suffering from the AIDS virus manifestly recognize the very consequences of such unauthorized disclosure.

The fact that Mr. Salatto is not HIV positive and does not have the AIDS virus heightens this particular violation.

Thus, one variation of invasion of privacy is called a "false light privacy claim."  Goodrich v. Waterbury Republican-American, 188 Conn. 107, 448 A.2d 1317 (1982).

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

[3 Restatement, Second (Torts), Section 652E.]

> . . . It is not, however, necessary to the action for invasion
> of privacy that the plaintiff be defamed.  It is enough that he
> is given unreasonable and highly objectionable publicity
> that attributes to him characteristics, conduct or beliefs that
> are false and so is placed before the public in a false position.
> . . .

[Comment b to Section 652E of the 3 Restatement, Second (Torts).]

Negligence.  The failure to provide medical assistance to one under the control and custody of the police, failure to take adequate preventative measures for one known to have possible suicidal tendencies as alleged, the unauthorized disclosure of sensitive information such as that the plaintiff *might* be HIV positive or suffering from the AIDS virus, particularly when such is not true, or the misuse of physical force all constitute a breach of a duty of care owed to one, particularly one in custody of the police, and there is in each of the foregoing situations a reasonable foreseeability of harm to Mr. Salatto.  Generally, see Collins v. City National Bank and Trust Company, 131 Conn. 167, 170, 38 A.2d 582 (1944).

Liability of the Town of Branford  --  For State law violations.

The actions of the individual defendants at issue were controlled by statute and police department regulations.   Nor is there any evidence that the officers were trained to make medical judgments.   Therefore, the acts and omissions of the officers did not involve the exercise of discretion on the part of the officers and neither the officers nor the town are entitled to governmental immunity.   Elliott v. Waterbury, 245 Conn. 385, 411, 715 A.2d 27 (1998).

Moreover, even if any of the acts or omissions at issue were deemed discretionary, the potential immunity is qualified and not available "first, where the

circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence."  Spears v. Garcia, 263 Conn.  22, 36, 818 A.2d 37 (2003).

In otherwords, the defendants cannot even make a good faith colorable claim of entitlement to any State law immunities for their misconduct.

Supervisory liability – defendant Grantland.

The allegations against defendant Grantland include his direct liability for failure to provide medical assistance (the Amended Complaint alleges that he was personally asked for assistance) and failure to adequately protect against a suicide attempt, as well as supervisory liability for such wrongs.

The Second Circuit Court of Appeals has "long recognized that supervisors may be 'personally involved' in the constitutional torts of their supervisees if:  (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event. . . ."  Spencer v. Doe, et al., 139 F.3d 107, 112 (2d Cir. 1998) (citation omitted).

-30-

<u>Liability of the Town of Branford -- For civil rights violations.</u>

There is sufficient evidence that the Town of Branford has violated the plaintiff's civil rights.

A municipality is liable for a constitutional violation by one of its employees or officials if there is proof of a "deliberate disregard" of a known defect in town training, supervision or other conduct of the type at issue.  <u>Hunter</u> v. <u>Bryant</u>, 502 U.S. 224, ___, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991).

Such municipality liability for a constitutional violation may be demonstrated where there is proof of a municipal policy, or a municipal custom such as an affirmative practice or tacitly, by a knowing tolerance of such wrongdoing. of violating a citizens rights.  <u>City of Canton, Ohio</u> v. <u>Harris, et al.,</u> 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).   In some circumstances such a policy or custom may also be demonstrated by a single instance of such misconduct.  <u>Board of the County Commissioners of Bryan County</u> v. <u>Brown, et al.</u>, 520 U.S. ___, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); <u>City of Canton, Ohio</u> v. <u>Harris, et al.</u>, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Qualified immunity shields government officials who reasonably but mistakenly conclude that their conduct is lawful, either (1) because the law was not clear at the time the official acted, or (2) because other reasonable police officers in the defendant's position might have made the same mistake.  <u>Hunter</u> v. <u>Bryant</u>, 502 U.S. 224, ___, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991); <u>Lennon</u> v. <u>Miller</u>, 66 F.3d 416, 420-21 (2d Cir. 1995).

"Immunity ordinarily should be decided by the court. . . ."  Hunter v. Bryant, 502 U.S. 224, ___, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991).

Additionally, a municipality is not entitled to the defense of qualified immunity.

**The plaintiff has suffered true prejudice as a result of the defendants' delinquencies.**

The plaintiff has offered an Affidavit identifying two witness who no longer locatable or reachable.

However, as discussed elsewhere, we believe the demonstrated willful disregard of the many pleadings and orders in this lawsuit, and, in particular, the dismissive and cursory manner in which the defense opposed the motion for default judgment and then again cursorily moved to vacate the default judgment should be the determinative factor in deciding whether or not to vacate the default judgment.

**Conclusion.**

The law firm representing the defendants is an experienced and a major law firm, with substantial numbers of attorneys and staff and many major clients. [A copy of key excerpts from the Website of the law firm representing the defendants is appended hereto.]

I am frankly puzzled by the systematic and apparently firm-wide utter disregard for their obligations in this lawsuit, obviously going far beyond the services of an individual attorney.

-32-

They manifestly have considered the other business of their office more important.   His many and relentless pro se pleadings and correspondence may have appeared as a nuisance, especially when compared to the more sophisticated pleadings of many attorneys, to be responded to only when forced to do so by the Court.   The many pleadings filed in the summer months when law office staff are seeking to enjoy vacations may also have aggravated this perception.

Perhaps the defense has also already "written off" this case, perhaps recognizing that they have no meritorious defense and/or perhaps also believing that Mr. Salatto will not make a sympathetic witness at a hearing in damages.

The only conceivable explanation for the defense delinquencies and their perfunctory, anemic attempt to justify them is that the defense does not take the plaintiff seriously, does not take its obligations to the Court seriously, and assumes a virtual entitlement to have the default judgment vacated.

Even if the defense had demonstrated a meritorious defense or if the plaintiff had failed to demonstrate prejudice, the record of defense contumacy in this case demonstrates patent willfulness and cries out for rejection of the request to vacate the default judgment.

Respectfully submitted,


_____/S/
MARTIN S. ECHTER
Federal Bar No. ct07596
Law Office of Patricia A. Cofrancesco
89 Kimberly Avenue
East Haven, CT 06512
Phone: (203) 467-6003
Fax: (203) 467-6004
E-Mail: pattycofrancescoatsbcglobal.net


<u>Certificate of Service</u>

　　　I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and MAILED, POSTAGE PREPAID, to:

Attorney John J. Radshaw, III, Howd & Ludorf, LLC,
65 Wethersfield Avenue, Hartford, Ct 06114

this _____ day of August, 2006.

_____
　　　　　　Martin S. Echter


-34-