IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------x
:
ROBERT SALATTO, JR.             :          3:02 CV 230 (EBB)(JGM)
:
v.                              :
:
TOWN OF BRANFORD, ET AL.        :          DATE: SEPTEMBER 22, 2006
:
------------------------------------------------x

RECOMMENDED RULING ON DEFENDANTS' MOTIONS FOR RECONSIDERATION

On February 6, 2002, plaintiff commenced this action, pro se and in forma pauperis, against defendants Town of Branford, and Branford Police Officers Patrick O'Malley, David Atkinson, and W. Thomas Grantland, with respect to an incident on November 15, 2001, in which plaintiff alleges he was subjected to physical and verbal abuse, and denied medical care. (Dkts. ##1-3); Amended Complaints were filed on January 2, 2003, February 4, 2004, and June 3, 2005 (Dkts. ##20, 42, 81).[1]  On August 12, 2002, Senior U.S. District Judge Ellen Bree Burns referred this file to this Magistrate Judge.  On October 30, 2002, counsel filed an appearance for defendants.  (Dkt. #10).[2]  On January 16, 2004, defendants filed their Answer and Affirmative Defenses. (Dkt. #35.  See also Dkt. #117).  Familiarity is presumed with the multiple rulings issued by Judge Burns and this Magistrate Judge, which have resolved dozens and dozens of motions filed in this lawsuit.  (See, e.g., Dkts. ##13, 40, 46, 52, 58, 59, 80, 96, 97, 109, 113, 114, 149, 187).  Under the latest scheduling order,

---

[1]In his Amended Complaints, plaintiff no longer makes any claims against defendants Chief of Police Robert Gill and defendant John Doe, who were named in the original complaint.

For some time, it was unclear whether defense counsel also represented defendant Grantland.  (See, e.g., Dkts. ##96, 141, 149).

[2]See note 1 supra.

all discovery is to be completed by September 29, 2006. (Dkt. #186, ¶ 2).

Largely at the request of defendants, but occasionally at plaintiff's request, this action was stayed from late November 2002 through late January 2004, primarily due to rehabilitation of the insurance company insuring defendants. (See, e.g., Dkt. #12 & 11/25/02 endorsement thereon; Dkt. #18 & 1/6/03 endorsement thereon; Dkt. #21 & 1/13/03 endorsement thereon; Dkt. #24 & 4/8/03 endorsement thereon; Dkt. #25 & 4/8/03 endorsement thereon; Dkt. #26 & 6/17/03 endorsement thereon; Dkt. #28 & 6/17/03 endorsement thereon; Dkts. ##29 & 40; Dkt. #30 & 7/17/03 endorsement thereon; Dkt. #31 & 8/21/03 endorsement thereon; Dkt. #41). On January 3, 2006, this Magistrate Judge granted plaintiff's Motion for Default as against all defendants except for defendant Grantland[3] for failure to respond to plaintiff's Second Amended Complaint. (Dkt. #96, at 1). On February 2, 2006, Judge Burns granted plaintiff's Motion for Default Judgment as against these defendants, in the absence of defendants having filed a Motion to Reopen, and referred a hearing in damages to this Magistrate Judge. (Dkts. ##113-14, at 1-2). Six days later, these defendants filed their Motion for Reconsideration, brief and affidavit in support, objection to plaintiff's motion, and Answer and Affirmative Defenses. (Dkts. ##115-17. See also Dkt. #122). On June 27, 2006, plaintiff's counsel filed his appearance. (Dkt. #184).[4]

---

[3]See note 1 supra.

[4]On June 29, 2006, this Magistrate Judge held a status conference in this case; at the time, twenty-eight motions were pending. (See Dkts. ##182-83, 186). That day, this Magistrate Judge issued an order (Dkt. #187), in which eighteen motions were denied without prejudice to renew (Dkts. ##110, 112, 118-21, 123, 125-26, 128, 130-32, 135, 139, 150-51,174); six motions were denied as moot without prejudice to renew (Dkts. ##111, 124, 127, 129, 133, 143); and one motion was granted (Dkt. #148). The only two motions left pending are defendants' Motions for Reconsideration (Dkts. ##115 & 122), which are addressed in this Recommended Ruling.

Fourteen days later, plaintiff's Motion to Postpone Settlement Conference and Reopen Scheduling Order (Dkt. #185) was granted in part in accordance with the scheduling order entered on June 29, 2006 by this Magistrate Judge. (See Dkt. #189; see also Dkt. #186).

For the reasons stated below, defendants' Motion for Reconsideration Re Order on Motion for Default (Dkt. #115) is <u>granted</u> and defendant's Motion for Reconsideration on Motion for Default Judgment (Dkt. #122) is <u>granted</u>.

## I. DISCUSSION

As previously indicated, this action was stayed for more than one year – from late November 2002 through late January 2004 -- primarily due to rehabilitation of the insurance company insuring defendants. As the twenty-three page electronic docket sheet indicates, the case was active, if not over-active, from that time on. On January 3, 2006, this Magistrate Judge granted plaintiff's Motion for Default as against all defendants except for defendant Grantland for failure to respond to plaintiff's Second Amended Complaint. (Dkt. #96, at 1-2). The January 3, 2006 Ruling advised plaintiff that if a motion for default judgment were not filed within thirty days, the Second Amended Complaint would be dismissed as to the three other defendants. (<u>Id.</u>) Consistent with this ruling, on January 24, 2006, plaintiff filed his Motion for Default Judgment. (Dkt.#108). On February 2, 2006, Judge Burns granted plaintiff's Motion for Default Judgment as against these defendants, in the absence of defendants having filed a Motion to Reopen, and referred a hearing in damages to this Magistrate Judge. (Dkts. ##113-14, at 1-2).

Six days later, these defendants filed their Motion for Reconsideration re Order on Motion for Default, brief and affidavit in support, objection to plaintiff's Motion for Default Judgment, and Answer and Affirmative Defenses. (Dkts. ##115-17). Two days later, these defendants also filed a Motion for Reconsideration on Order on Motion for Default Judgment, and brief and affidavit in support. (Dkt. #122). On February 16, February 17, and February 22, 2006, plaintiff filed <u>pro se</u> briefs and exhibits in opposition (Dkts. ##134, 136, 138),

3

which plaintiff withdrew on March 28, 2006 (Dkt. #148), substituted by his brief in opposition filed March 28, 2006. (Dkt. #147).[5]

As previously indicated, on June 27, 2006, counsel filed his appearance for the pro se plaintiff and at the status conference before this Magistrate Judge, held two days later, counsel was ordered to file a supplemental brief in opposition to defendants' Motions for Reconsideration.[6] (See Dkts. ##183-84, 186). On August 25, 2006, plaintiff filed his supplemental brief in opposition (Dkt. #197[7]; see Dkts. ##190-96), as to which defendants filed their reply brief on September 20, 2006. (Dkt. #200; see also Dkts. ##198-99).

In their briefs and affidavits, defendants represent that sometime during the summer of 2005, defendants' file for this case was mistakenly sent into closed file storage, the file

---

[5]The following six exhibits were attached: handwritten chart of discovery requests, motions, and Court orders, with defendant's response (or lack thereof), commencing on October 7, 2004 (Exh. A); copies of plaintiff's letters to defense counsel, dated August 1, 2005, January 15, 2006, January 25, 2005, and two undated letters (Exh. B); copies of correspondence from the Town of Branford Board of Selectmen, with copies to defense counsel, dated July 5, August 30, October 5, and December 29, 2005 (Exh. C); affidavit of plaintiff, sworn to February 15, 2006 (Exh. D); copies of first page of defendants' Answer and Affirmative Defenses, dated January 14, 2004 and of defendant Grantland's Responses/Objections to Plaintiff's Interrogatories, dated June 3, 2004 (Exh. E); and copy of U.S. Marshals Service' Process Receipt and Return (Exh. F).

[6]While plaintiff's counsel refers to plaintiff's previously filed briefs in opposition (Dkts. ##134, 136, 138), and specifically refers to plaintiff's brief, filed on March 24, 2006 (Dkt. #147) which "supplants" plaintiff's previously filed briefs as such briefs were withdrawn upon the filing of plaintiff's March 24th brief (see Dkt. # 187), plaintiff's supplemental brief filed on August 25, 2006, is intended to "supplement rather than supplant" plaintiff's previously filed brief. (See Dkt. #197, at 1). Accordingly, this Court will consider plaintiff's briefs in opposition filed on March 28, 2006 and on August 25, 2006. (Dkts. ##147 & 197).

[7]The following ten exhibits were attached: excerpts from the website of defense counsel's law firm (Exh. 1); copy of plaintiff's pro se plaintiff's itemization of filings and discovery requests, from October 7, 2004 to February 9, 2006 (Exh. 2); excerpts from Defendants' Responses/Objections to Plaintiff's Interrogatories, dated June 3, 2004 (Exh. 3); copies of correspondence between plaintiff and defense counsel, from June 9, 2004 to November 24, 2004 (Exh. 4); copy of cover sheet of transcript of plaintiff's deposition, taken on September 2, 2004 (Exh. 5); copies of correspondence between plaintiff and defense counsel, from January 25, 2005 to February 16, 2006 (Exh. 6); copies of correspondence between plaintiff and defendant Town of Branford, with copies to defense counsel, from July 5, 2005 to December 29, 2005 (Exh. 7); and copies of Branford Police Department internal regulations (Exhs. 8-10).

was erroneously marked as closed, and as a result, pleadings associated with this file were not properly forwarded to counsel but instead forwarded to a closed filing folder. (Dkt. #116, at 1-2; Dkt. #116-1, ¶¶ 4-5, 8; Dkt. #122-1, Brief at 1-2 & Aff't, ¶¶ 4-5, 8). Defendants further represent that defense counsel was not aware of this problem, and of the pendency of the Motion for Default, until he received copies of filings from plaintiff on February 1, 2006, at which time he "took every step to cure the default and address all of the pending outstanding issues." (Dkt. #116, at 1-2; Dkt. #116-1, ¶¶ 6-7; Dkt. #122-1, Brief at 1-2 & Aff't ¶¶ 6-7). According to defendants, the circumstances giving rise to the entry of default were "inadvertent," "amount to excusable neglect," and were the result of a "mistake" (Dkt. #200, at 3); office procedures have been changed to prevent such an event from reoccurring. (Dkt. #116, at 2; Dkt. #116-1, ¶ 10; Dkt. #122-1, Brief at 2 & Aff't ¶ 10). Defendants argue that "good cause" exists under FED. R. CIV. P. 60, in that defendants' failure to respond in a timely fashion was based on an "administrative procedural error" that was "entirely inadvertent" and would exact a "harsh or unfair result." (Dkt. #116, at 2-3; Dkt. #116-1, ¶¶ 9, 11; Dkt. #122-1, Brief at 2-3 & Aff't ¶¶ 9, 13; see also Dkt. #200, at 2-3). Defense counsel has no plausible explanation as to why he did not receive e-mail notice of any of these filings, and is "investigat[ing]" whether such "e-mail notice was consumed by a spam filer or other electronic issue." (Dkt. #122-1, Brief at 2 & 3 & Aff't ¶ 11).

In his brief in opposition, plaintiff argues that defendants "ultimately abandoned this action in late 2004," ignoring seventy-five separate contacts – including approximately fifty discovery requests and motions, several court orders, letters from plaintiff, and letters from his client on which he was copied. (Dkt. #147, at 1, 3 & Exhs. A-C; see Dkt. #197, at 7-11

5

& Exhs. 2, 4, 6-7). Plaintiff also expresses skepticism that defense counsel had a memory lapse with respect to this lawsuit while the files were "diverted to a closed filing folder" and that his e-mail notices from the court were "consumed by a computer filter." (Dkt. #147, at 3-5)(internal quotations omitted).[8] Moreover, plaintiff asserts that "[g]iving the maximum benefit to the defense, it is conceivable that defense counsel <u>might</u> not have received <u>every</u> single <u>pro se</u> pleading," letter or item of correspondence, but it is "<u>in</u>conceivable that none or most were not received by counsel." (Dkt. #197, at 13)(emphasis in original). According to plaintiff, the evidence demonstrates a "clear absence of minimal internal procedural safeguards which the Second Circuit has cited as not establishing excusable neglect." (<u>Id.</u> at 13-14)(internal quotations & citation omitted). Plaintiff further argues that irreparable prejudice exists as "crucial witnesses" have relocated out of state (Dkt. #147, at 7-8 & Exh. D; Dkt. #197, at 32); that defendants' bare assertion that a meritorious defense exists is substantively insufficient (Dkt. #147, at 8; <u>see</u> Dkt. #197, at 14-32); and that defendants' non-responsiveness is attributable to their own willfulness and culpable conduct (Dkt. #147, at 8-9).

A. STANDARD OF REVIEW

As stated above, on January 3, 2006, this Court defaulted defendants Town of Branford, O'Malley and Atkinson and directed defendants to file a motion to set aside the default within twenty days of the order and directed plaintiff to file a motion for default judgment within thirty days of the order; this default was entered pursuant to FED. R. CIV. P. 55(a), which provides for an entry of default when a party against whom a judgment is sought has failed to plead or otherwise defend. (<u>See</u> Dkt. #96). In absence of any filing by

---

[8]In plaintiff's words, "The shamelessness with which counsel makes these incredulous averments is striking." (<u>Id.</u> at 4).

defendants as of February 2, 2006, Judge Burns issued a default judgment pursuant to FED. R. CIV. P. 55(b)(2) against these defendants. Defendants now seek relief from the entry of both orders.

A court may set aside entry of default "[f]or good cause shown," and in a case in which default judgment has entered, "may likewise set it aside in accordance with Rule 60(b)." FED. R. CIV. P. 55(c). Rule 60(b) allows for relief from a final judgment for reasons, inter alia, of mistake, inadvertence, surprise, or excusable neglect. To determine whether to vacate a judgment, courts generally examine three criteria: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996)(internal quotations & citation omitted). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh and unfair result." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)(citation omitted). It is the sound discretion of the district court to determine whether relief from default is to be granted and such decision is based on the individual circumstances of the case. Id. at 95; see also Anderson v. Meachum, 3:93 CV 868 (AHN), 1997 WL 409521, at *2 (D. Conn. June 10, 1997)(citations omitted).

It is "well established that default judgments are disfavored" and that a "clear preference exists for cases to be adjudicated on the merits." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001)(citations omitted). The Second Circuit has held that "strong public policy favors resolving disputes on the merits," acknowledging, however, that "although courts have an interest in expediting litigation, abuses of processes may be

prevented by enforcing those defaults that arise from egregious or deliberate conduct." Id. at 172 (internal quotations & citation omitted).

### 1. WILFULNESS VS. ADMINISTRATIVE ERROR

As stated above, defendants urge this Court to reconsider its order on plaintiff's Motion for Default and Motion for Judgment of Default on grounds that "good cause exists to set aside the default" as such default was "entirely inadvertent" and was the result of administrative error in closing the file and in directing the pleadings to the closed files. (Dkt. #116, at 3; Dkt. #122-1, Brief at 3; Dkt. #200, at 2-3). According to plaintiff, in the face of the "flurry" of correspondence between plaintiff and defense counsel and the extensive motion practice plaguing this case, defendants' "proffered explanation is perfunctory, conclusory and illogical" and the defense's delinquencies must be characterized as "[d]eliberate disregard" or "willful ignorance." (Dkt. #147, 2-6; Dkt. #197, at 5-14).

While there are some types of neglect that are "excusable" as contemplated by Rule 60(b), "[t]he subjective inquiry into willfulness effectively distinguishes those defaults" that "arise from egregious or deliberate conduct" from those "careless" errors that, "though due to neglect, are excusable." American Alliance, 92 F.3d at 61. Accordingly, a court may find willfulness where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained." Dixon v. Ragland, 2005 WL 2649484, at *2 (S.D.N.Y. Oct. 14, 2005)(citations omitted).

This case draws similarities to Dixon, wherein the officer defendants in that case acknowledged that they failed to track the status of the case for twenty-two months and offered no explanation for their failure to respond to the complaint, but instead simply asserted that their Legal Division's inaction was the "result of inadvertence" and that the

materials sent to the Legal Division had been misplaced. 2005 WL 2649484, at *2. Judge Swain concluded that in light of the foregoing, the officer defendants' failure to respond in a timely fashion was willful. Id.

Moreover, while defendants in this case claim, and the Court does not doubt, that the entry of default was not strategic (see Dkt. #200, at 3), in such a case the Second Circuit has directed that a refusal to vacate a judgment is appropriate. See American Alliance, 92 F.3d at 60-61. In this case, defense counsel's actions and inactions rise to a level exceeding "mere administrative or clerical error," carelessness or negligence. See id. Such "administrative or clerical error" existed in American Alliance, wherein defendant's in-house counsel's clerk misfiled its answer, and did not rectify the mistake after two notices were mailed and after two months passed. Id. While the Second Circuit concluded that this "grossly negligent" conduct "was not willful, deliberate or evidence of bad faith, though it weigh[ed] somewhat against granting relief," id., the case at bar involves continuing misconduct for a time-period ninefold of that at issue in American Alliance, and counsel here ignored more than seventy-five separate contacts, not merely two.

Default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary" under which circumstances, these procedural rules "play a constructive role in maintaining the orderly and efficient administration of justice." Enron, 10 F.3d at 96 (citation omitted). Defense counsel's conduct in this case weighs against granting relief from the default judgment as it is difficult for this Court to find defendants' action or inaction anything but willful and "due in large part to the status of the plaintiff as a prisoner." Waul v. Coughlin, 1995 WL 258165, at *4 (S.D.N.Y. May 2, 1995). This is not an instance where defense counsel ignored a limited number of filings or correspondence,

but rather <u>seventy-five</u> separate contacts, including approximately fifty discovery requests and motions, several court orders, letters from plaintiff, and letters from his client on which he was copied. (Dkt. #147, at 1, 3 & Exhs. A-C; <u>see</u> Dkt. #197, at 8-11). At some point substantially prior to February 1, 2006, it would have been reasonable for defense counsel to have checked the electronic docket sheet on this file to discover that contrary to his law firm's administrative error, the case was indeed active, and not closed.

<u>        2. PREJUDICE TO PLAINTIFF</u>

According to defendants, "[s]etting aside default would not prejudice . . . plaintiff [as] [h]e is interested in [his] day in court," and in light of defendants' "meritorious defenses, . . . [t]he judgment of default would bring about a harsh or unfair result." (Dkt. #116, at 3; Dkt. #122-1, Brief at 3-4). Additionally, defendants posit that the fact that the default will not prejudice plaintiff is "[o]f significant importance" as "[f]or several months, . . . plaintiff had been a fugitive from justice," during which escape plaintiff retained counsel. (Dkt. #200, at 3). Plaintiff contends, however, that "one crucial percipient witness" has moved permanently to Florida, the whereabouts of another crucial fact witness have recently become unknown, and defendants disregard of court orders has resulted in outstanding discovery. (Dkt. #147, at 7-8 & Exh. D; <u>see</u> Dkt. #197, at 32).

While delay alone is not a sufficient basis for establishing prejudice, delay that will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion" will establish prejudice to the opposing party. <u>Dixon</u>, 2005 WL 2649484, at *2 (citation & internal quotations omitted). Moreover, although defendants urge this Court to adopt their view that prejudice will not result as plaintiff was a "fugitive from justice" "for several months," (<u>see</u> Dkt. #200, at 3), plaintiff was not on

10

escaped status during the more than one year in which defendants ignored seventy-five separate contacts, including approximately fifty discovery requests and motions, several court orders, letters from plaintiff, and letters from his client on which he was copied. (Dkt. #147, at 1, 3 & Exhs. A-C; see Dkt. #197, at 8-11). Accordingly, the prejudice plaintiff has suffered as a result of the delay in this litigation weighs somewhat in favor of upholding the default orders.

### 3. EXISTENCE OF MERITORIOUS DEFENSE

"To satisfy the criterion of a meritorious defense, the defense need not be ultimately persuasive at this stage. A defense is meritorious if it is good at law so as to give the factfinder some determination to make." American Alliance, 92 F.3d at 61 (internal quotations & citation omitted). The "test" of the existence of a meritorious defense is measured by "whether the evidence submitted, if proven at trial, would constitute a complete defense." Pecarsky, 249 F.3d at 173 (internal quotations & citation omitted). Defendants must do more than "mere[ly] invo[ke] [a] potentially valid defense[ ]." Dixon, 2005 WL 2649484, at *10. "[C]onclusory denials" will not suffice. Pecarsky, 249 F.3d at 173.

In their underlying motion, defendants simply stated, without further support, that "defendants are protected by governmental immunity; this theory, along with the contested issues of liability and damages establish that meritorious defenses are presented." (Dkt. #116, at 3; Dkt. #122-1, Brief at 3). However, defendants further articulate their defenses in their reply brief.[9] Accordingly, because defendants' detailed claims[10] in their reply brief

---

[9]Plaintiff's newly retained counsel has indicated that "it is [his] understanding that the Court may yet allow further amendment of the Complaint" (Dkt. #197, at 2), so that plaintiff's counsel does not confine his assertions to the claims alleged in plaintiff's Amended Complaint (see Dkt. #81), but rather addresses the following sixteen claims: constitutional and statutory right to privacy (Dkt. #197, at 16-18); denial of medical assistance in violation of the Town of Branford's General Orders and the Due Process Clause of the Fourteenth Amendment (id. at 19-22); failure to

11

could constitute a complete defense at trial, the existence of a meritorious defense weighs in favor of vacating the default entered against them. See Pecarsky, 249 F.3d at 173-74.

    4. SPECIAL CONSIDERATIONS

As stated above, "[o]ther relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith

---

provide adequate security to prevent an attempt at suicide, denial of substantive due process (id. at 21-23); excessive force, assault and battery (id. at 24); intentional infliction of emotional distress (id. at 24-26); negligent infliction of emotional distress (id. at 26); slander (id. at 27); libel (id.); common law invasion of privacy (id. at 27-29); negligence (id. at 29); liability of the Town of Branford for state law and civil rights violations (id. at 29-30, 31-32); and supervisory liability as to defendant Grantland (id. at 30).

In response, defendants assert defenses to these claims in their reply brief. (See Dkt. #200, at 3-11). Specifically, defendants argue that

> [I]n order for the plaintiff to prevail over the officer's qualified immunity[,] the plaintiff would have to prove that the officers were deliberately indifferen[t] to his serious medical needs. Evidence exists that the plaintiff has no serious medical needs other than his drug addiction. Additionally, when the plaintiff complained of "chest pain," the officers summoned the Fire Department who gave him a clean bill of health. Moreover, the record will demonstrate that Salatto is the proverbial boy who cried wolf, always claiming a "medical problem" to avoid the lock-up. . . .
>
> With regard to the claim that the officers utilized excessive force in violation of his federal constitutional rights, the examination of this claim turns on the reasonableness of the officers' actions. . . . Salatto resisted every effort to be transported to NHCC and attempted injury to himself on several occasions. [Defendants] believe that the evidence will reveal that Salatto did not suffer any injuries whatsoever . . . [as] Salatto cannot adduce objective evidence other than his self-serving statements that he was subject to any excessive force. . . .
>
> With regard to Salatto's claims against Chief Robert Gill and the Town of Branford, the plaintiff will not prevail . . . [as] the plaintiff has not alleged a viable claim based on the doctrine articulated in Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). . . . Salatto merely mentions that Chief Gill is responsible for Atkinson, O'Malley and Doe[;] . . . [t]hese allegations do not establish any sort of Monell liability. Rather, these are the sort of claims that establish a respondeat superior claim . . . [which] theory does not apply . . . .

(Dkt. #200, at 6-8). Defendants further articulate their defenses to plaintiff's state law and state constitutional claims. (See id. at 8-11).

[10]See note 9 supra.

Case 3:02-cv-00230-EBB    Document 201    Filed 09/22/2006    Page 13 of 15

and whether the entry of default would bring about a harsh and unfair result." Enron Oil Corp., 10 F.3d at 96 (citation omitted). This Court exercises its sound discretion to determine whether relief from default is to be granted and such decision is based on the individual circumstances of the case. Id. at 95; see also Anderson, 1997 WL 409521, at *2 (citations omitted).

While defense counsel in this case blatantly disregarded his professional responsibilities by his wilful abandonment of this litigation, there is no indication that the individual defendants had any knowledge of defense counsel's conduct.[11] Thus, an entry of default against the defendants would "in effect be entering a default against individuals who have little ability to control the course of the litigation." Waul, 1995 WL 258165, at *5.

Additionally, while defense counsel's conduct and the prejudice that plaintiff endures through the loss of key witnesses weigh heavily in favor of upholding this Court's entries of default, defendants have articulated sufficient evidence of a meritorious defense and, as stated above, the entry of a default judgment will impose a harsh result on the individual defendants.[12] Thus, while "the degree of negligence in precipitating a default is a relevant factor to be considered along with the availability of a meritorious defense and the existence of prejudice," American Alliance, 92 F.3d at 61, the Second Circuit requires that this court weigh all relevant factors and when "doubt exists as to whether a default should be granted

---

[11] While plaintiff did send correspondence to the Town defendant directly, defense counsel was copied and it is reasonable to presume that defendants left such response to their attorney.

[12] Prior to the entry of default, defendants failed to respond to plaintiff's amended or revised complaint, which answer with special defenses has since been filed. (See Dkt. #117). According to defendants, plaintiff's "amended or revised complaint is not substantively different from the previous complaints and does not have any additional allegations or causes of action that inject any new issues in the case. . . . [Thus, defendants'] answer was the same with the same special defenses." (Dkt. #200, at 2; see Dkt. #117).

or vacated, the doubt should be resolved in favor of the defaulting party." Enron Oil Corp., 10 F.3d at 96. Accordingly, construing the "criteria of the Rule 60(b) set aside . . . generously," id. (citations omitted), and embracing the strong preference for resolving disputes on their merits, the doubt that exists in determining whether the default should be vacated shall be resolved in defendants' favor. That notwithstanding, and in light of defendants' conduct that can hardly be described as negligent or attributable to mere administrative error, plaintiff shall be awarded attorney's fees incurred in opposing defendants' two pending motions. (See Dkt. #197).[13]

## II. CONCLUSION

Accordingly, for the reasons stated above, defendants' Motion for Reconsideration Re: Order on Motion for Default (Dkt. #115) and Motion for Reconsideration on Motion for Default Judgment (Dkt. #122) are granted.[14]

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

---

[13]Plaintiff's counsel shall submit an itemized bill to defense counsel **on or before October 6, 2006**. If counsel are unable to agree on an appropriate amount, they shall contact the Magistrate Judge's Chambers to schedule a telephonic status conference on this issue.

[14]Counsel are to contact the Magistrate Judge's Chambers to arrange a brief telephonic status conference to address, inter alia, the matters of discovery and settlement.

Dated at New Haven, Connecticut, this 22nd day of September, 2006.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge