**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**ROBERT F. SALATTO, JR.** :   **NO. 3:02 cv 0230 (EBB) (JGM)**
    **Plaintiff**

**VS.** :

**TOWN OF BRANFORD, ET AL.** :   **OCTOBER 6, 2006**
    **Defendants**

**OBJECTION**
**RECOMMENDED RULING**
<u>**ON DEFENDANTS' MOTIONS FOR RECONSIDERATION**</u>

      The plaintiff, by counsel, respectfully submits the following Objection to the

Magistrate's Recommended Ruling on Defendants' Motions for Reconsideration,

filed September 22, 2006. **1**

      The Recommended Ruling has granted Motion for Reconsideration Re

Order on  Motion for Default, and Motion for Reconsideration Re Order on Motion

for Default Judgment.  **2**

---

**1**     Service was by Electronic Mail, Friday, September 22, 2006.   Rule 72.2(a) of the Local Rules for United States Magistrate Judges requires that one "must, within ten (10) days after service of such . . . recommended ruling, serve on all parties, and file with the Clerk, written objection . . . ."  Federal Rules of Civil Procedure 6(a) provides, in relevant part, that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation. Accordingly, these Objections must be filed and served no later than Friday, October 6, 2006.

**2**     Those defendants subjected to a default and default judgment were the David Atkinson, Patrick O'Malley, Chief of Police Robert Gill, Shift Supervisor John Doe, and the Town of Branford, but not defendant W. Thomas Grantland.

**ORAL ARGUMENT <u>IS</u> REQUESTED**
**TESTIMONY IS <u>NOT</u> REQUIRED**

**Summary.** We object to the Magistrate's conclusion that the defendants have alleged complete meritorious defenses, and that therefore the Default and the Default Judgment should be vacated.

We respectfully disagree that a complete meritorious defense is stated. In fact, as to at least the major claim of the plaintiff we believe we will be entitled to summary judgment, as to both individual defendants and the Town of Branford.

We also note that the so-called meritorious defenses were set forth for the very first time in the defendants' Reply to our Supplemental Memorandum of August 25, 2006, not in any pleading prior to the entry of Default and the entry of a Default Judgment and and not even in their two Motions for Reconsideration. It would have improper to thus supplement the "record" even in the Motions for Reconsideration, and it certainly is improper to thus supplement the "record" in the Reply to our Supplemental Opposition to the Motions for Reconsideration.

Additionally, we observe that other relevant factors we offered in opposition to the motions for reconsideration compel overruling the Magistrate's Ruling.

Of course, we do not object to the Magistrate's conclusions that the defendant's actions were "willful," that the plaintiff suffered undue prejudice, and that sanctions are appropriate even if the Default and Default Judgment are vacated.

**Nature of this lawsuit.** This prisoner lawsuit alleges that the plaintiff was (A) subjected to unreasonable physical force, (B) denied medical treatment on

several occasions, (C) given inadequate protective supervision while in custody resulting in his attempt to commit suicide, and (D) on a number of occasions subjected to the false and unauthorized spreading of rumors that he was HIV positive and/or suffered from AIDS.  The complaint also alleges a failure of the Town of Branford to adequately train and supervise its police officers.

**Relevant law.**    A court may set aside a default "[f]or good cause shown," **3** and as to a judgment by default, "may likewise set it aside in accordance with Rule 60(b)." **4**    Under Rule 60(b)(1) a court may vacate a default judgment for "reasons [of] mistake, inadvertence, surprise, or excusable neglect." **5**

Setting aside a default judgment: requires evaluation of three factors:  "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).

"Other relevant factors may also be considered, . . . . **6**

**Willfulness.**   With respect to the criterion of "willfulness," the Magistrate contrasted the instant case to the leading Second Circuit American Alliance [Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996), which we also

_____

**3**      Fed. R. Civ. P. 55(c)

**4**      Fed. R. Civ. P. 60(b).

**5**      Fed. R. Civ. P. 60(b)(1).

**6**      Enron Oil Corp. v. Diakuhara, supra, 10 F.3d at 96 (citation omitted).

discussed in our Supplemental Memorandum.

In her Recommended Ruling the Magistrate observed, in part, that "the case at bar involves continuing misconduct for a time-period ninefold that at issue in American Alliance, and counsel here ignored more than seventy-five separate contacts, not merely two [, in contrast to the situation in American Alliance]."  [Recommended Ruling, at page 9.]

The Magistrate further noted that those seventy-five separate contacts included "approximately fifty discovery requests and motions, several court orders, letters from plaintiff, and letters from his client on which he was copied." [Recommended Rulings, at page 10.]

In our Supplemental Memorandum we urged that the "the record demonstrates is an inexplicable multi-year pattern of willful neglect by a major law firm, with but a  mere perfunctory attempt at justification.  It is as if Mr. Salatto, who was clearly viewed with a degree of contempt by the Branford Police, as demonstrated by their own records and admissions, was also dismissed in the course of this litigation as something of a nuisance, a metaphorical gnat to be flicked off the judicial 'sleeve' as one whose rights should be similarly viewed and treated with less than conscientious regard by the Court." [Plaintiff's August 25, 2006 Supplemental Memorandum, at page 2.]  "In sum, what is evidenced is not a mere "administrative" error but rather systematic disinterest in the obligations imposed by this lawsuit, evidence that this pro se

prisoner lawsuit was fundamentally ignored and dismissed as not worthy of serious or conscientious attention."  [Plaintiff's August 25, 2006 Supplemental Memorandum, at page 14.]

While not adopting our metaphor, the Magistrate did in fact conclude that "[d]efense counsel's conduct in this case weighs against granting relief from the default judgment as it is difficult for this Court to find defendants' action or naction anything but willful and "due in large part to the status of the plaintiff as a prisoner," quoting from Waul v. Coughlin, 1995 WL 258165, at *4 (S.D.N.Y. May 2, 1995) .

We certainly do not object to that portion of the Magistrate's Recommended Ruling.

**Prejudice.**  As to the issue of "prejudice," the Magistrate recognized that one witness plaintiff considers important has moved to Florida, the whereabouts of another has become unknown, and the defendants' disregard of court orders has resulted in outstanding discovery.  [Recommended Ruling, at page 10.]

Accordingly, as to element of "prejudice" the Magistrate concluded that "the prejudice plaintiff has suffered as a result of the delay in this litigation weighs somewhat in favor of upholding the default orders.

Indeed, there remain many motions to compel and for sanctions because of discovery failures and/or discovery abuse, each of which was dismissed without prejudice after instant counsel entered his appearance for the plaintiff and while the defendants motions for reconsideration concerning the default and

the default judgment were resolved.    While the Magistrate's award of attorney fees for instant counsel is certainly welcome, the many outstanding discovery issues and related sanction claims mean that the plaintiff and his now counsel must invest substantially in efforts that would not have been necessitated but for the defense pattern of extreme delinquencies.

Again, we certainly do <u>not</u> object to that portion of the Magistrate's Recommended Ruling either.

**<u>Meritorious defense, and "other" countervailing factors.</u>**

Respectfully, we <u>do</u> object to the Magistrate's conclusion regarding the issue of the existence of a meritorious defense.  <u>First</u>, the  Magistrate relied on matter that cannot form the basis for a ruling on a motion for reconsideration. <u>Second</u>, even if a meritorious defense exists it is offset by another countervailing factor in the determination whether to set aside a default or default judgment. <u>Third</u>, we respectfully disagree with the conclusion that the defendants have submitted "evidence [which], if proven at trial, would constitute a complete defense." <u>Pecarsky</u> v. <u>Glaxiworld.com, Ltd.</u>, 249 F.3d 167, 173 (2d Cir. 2001).

The one factor that the Court found weighing in favor of vacating the default and default judgment was that the defendants have belatedly offered what the Court characterizes a potentially a complete defense. [Recommended Ruling, at pages 11-12.]

We respectfully urge that the defendants' proferred defenses should not be determinative in this instance.

**First**, it was only after newly appearing plaintiff's counsel, in our August 25, 2006 Supplemental Memorandum, pointed out the defects in both the defendants' Motion for Reconsideration Re Order on Motion for Default <u>and</u> in the Motion for Reconsideration Re Order on Motion for Default Judgment that the defense at last deigned to discuss potential defenses in more than such a perfunctory manner.

In each of those motions for Reconsideration they addressed the issue of a "meritorious defense" in only a single perfunctory sentence:

> . . . Most of all, as police officers, these defendants are protected by governmental immunity; this theory, along with the contested issues of liability and damages establish that meritorious defenses are present.

[Respectively, Motion for Reconsideration Re Order on Motion for Default, at page 3, <u>and</u> Motion for Reconsideration Re Order on Motion for Default Judgment, at page 3.]

Rather, the detailed preferred "meritorious defenses" which the Magistrate credite were preferred for the very first time in the defendants' September 20, 2006 Reply to our Supplemental Memorandum, two days before the Magistrate issued her September 22, 2006 Recommended Ruling.

Therefore, the defendants' Reply to the Supplemental Memorandum was not a true "reply," but rather a "supplement" remaking their "record" of purported "meritorious defenses."    This would be objectionable when party subjected to a default or default judgment initially opposes a motion for default or default

judgment.   It is particularly inappropriate when a party seeks "reconsideration" of a default or default judgment already entered.

The so-called meritorious defenses would not have been admissible much less determinative had they been asserted for the very first time in the Motions for Reconsideration of the Default or in the Motion for Reconsideration of the Default Judgment; therefore, they certainly should not be admissible or determinative since they were not even preferred in either of those motions.

The standard for granting a motion for reconsideration is strict.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

"A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made."  Lopez v. Smiley, 375 F.Supp.2d 19, 21-22 (D. Conn. 2005) (internal quotation marks omitted).

The court should grant a motion for reconsideration only if the moving party "point[s] to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., supra, 70 F.3d at 257.   **7**

_____

**7**    This decisions reporting and applying this standard, mostly not officially reported, are numerous.  On-Line Technologies, Inc. v. Perkin-Elmer Corp., et al., ___ F.Supp.2d ___, 2006 WL 2642205 (D.Conn.) (JBA); Young v. Shipman, 2006 WL 1646164 (D.Conn.) (RNC); Nationwide Mutual Insurance Co., et al. v. Bland, et al., 2006 WL 860138 (D.Conn.) (RNC);  King v. Connecticut Appellate Court, 2005 WL 293502 (D. Conn.) (JCH); Goins v. JBC & Associates, P.C., et al., 2004 WL 2713235 (D.Conn.) (MRK).

Again, the so-called meritorious defense was set forth for only the very first time in the defendants' September 20, 2006 Reply to our Supplemental Memorandum, two days before the Magistrate issued her September 22, 2006 Recommended Ruling.

**Second**, even if the Court permits the proffered defenses to be considered although not included prior to the filing of those motions for reconsideration and not even included in those motions for reconsideraton,  the multiple and continued defendant's disregard of its responsibilities including the delinquencies  in the very Motion for Reconsideration re Order on Motion for Default, and in the Motion for Reconsideration on Order on Motion for Default Judgment constitute  an appropriate "[o]ther relevant factors" which should be considered when evaluating a motion to vacate a default judgment,  Enron Oil Corp. v. Diakuhara, supra, 10 F.3d at 96 (citation omitted), and should cause the Court to deny the motions for reconsideration.

Again, the only two initial references to defendants' supposed meritorious defense was a perfunctory single sentence:

> . . . Most of all, as police officers, these defendants are protected by governmental immunity; this theory, along with the contested issues of liability and damages establish that meritorious defenses are present.

[Respectively, Motion for Reconsideration Re Order on Motion for Default, at page 3, and Motion for Reconsideration Re Order on Motion for Default Judgment, at page 3.]

-9-

When members of an experienced and major firm offer such a pitiful proffer it can only mean that they simply do not take their obligations to the Court seriously and they assume a virtual entitlement to having the case reinstated. manner.

In otherwords, even after (1) having "ignored more than <u>seventy-five</u> separate contacts" [Recommended Ruling, at page 9], (2) having been defaulted, and (3) having been subjected to a Default Judgment the defendants still did not take their obligations to the Court seriously when they (4) moved for Reconsideration in order to vacate the Default but included only one perfunctory sentence on the issue of a "meritorious defense" and then (5) moved for Reconsideration in order to vacate the Default Judgment and, again, included only one perfunctory sentence on the issue of a "meritorious defense."

Therefore, the defendants' Reply to the Supplemental Memorandum was not a true "reply," but rather a "supplement" remaking their "record" of purported "meritorious defenses."    This would be objectionable when party subjected to a default or default judgment initially opposes a motion for default or default judgment.   It is particularly inappropriate when a party seeks "reconsideration" of a default or default judgment already entered.

Again, if the Magistrate's ruling stands the defense will be rewarded for taking advantage of the mere happenstance, from the defense perspective, that an experienced attorney entered the case on behalf of the previously <u>pro</u> <u>se</u>

plaintiff and exposed that the defense had twice disregarded its obligation to demonstrate a "meritorious defense."

Therefore, despite the belated proffer of supposed defenses the defendants should not escape the just consequences of their initial, multiple instances of disregard of their obligations to proffer "meritorious defenses" to the court even if the Court now agrees with the Magistrate that complete meritorious defenses have been proferred.

Again, that latter element is an appropriate "[o]ther relevant factor[..]," which may also be considered when evaluating a motion to vacate a default judgment, Enron Oil Corp. v. Diakuhara, supra, 10 F.3d at 96 (citation omitted), and in this case should "tip the scales" of justice in favor of granting our Objection, overruling the Magistrate's decision to set aside the Default and Default Judgment, and reinstating the Default and the Default Judgment.

**Third**, we respectfully disagree that three defaulted defendants have offered a potentially complete defense.

Statements that Mr. Salatto is HIV positive or has AIDS – Constitutional and statutory violations. (See other sections of this memorandum, infra, for various state common law violations for disclosure of information about allegedly being HIV positive or having the AIDS virus, e.g., state law invasion of privacy and/or libel and/or slander, intentional infliction of emotional distress, negligent infliction of emotional distress.)

The defense has not disputed Mr. Salatto claim that several of the individual defendants told a number of other persons, including but not limited to Mr. Salatto's then fiancée, that he was HIV positive and/or had the AIDS virus, and otherwise told them he suffered from related conditions, the officers often using particularly egregious language in such communications.

The defendants' proffered defense that such statements are subject to the defense of qualified immunity cannot stand based on the evidence of record, and we suggest we will be entitled to summary judgment on at least this claim.

But even assuming the truth of the defendants' factual claims, they do not provide a defense, qualified or otherwise, in this particular case.

A specific State statute sets out precise limitations on such communications, and none of the statements attributed to the defendants fit within those precise limitations.

(Mr. Salatto also denies that he is HIV positive or has the AIDS virus.)

Even within the medical, police and corrections systems communications about HIV status or AIDS are carefully limited and restricted, and none of the communications at issue fit within any of those permissible instances of communication.

Those communications even violate the otherwise barebones Branford Police Department guidelines in effect at the time, and since expanded. [Respectively, Branford Police Document concerning "Infectious Diseases," Branford Police Department General Order 87-3, and Branford Police General

-12-

Order 99-1, respectively Nos. 8, 9 and 10 of Plaintiff's August 25, 2006 "Exhibits Filed in Support of Supplemental Memorandum in Support of Opposition to Motion to Vacate Default Judgments, and Related Exhibits," which are incorporated herein by reference.]

Therefore, the individual defendants who made such statements cannot fairly claim either that (1) other reasonable police officers could have made the same mistake, or (2) that the relevant law was not "clearly established" at the time, the criteria for the defense of qualified immunity for a federal constitutional violation, the latter two criteria being the alternate grounds to support the affirmative defense of qualified immunity. [The relevant law of qualified immunity is discussed in greater detail, infra.]

An individual has a constitutional right to privacy of information regarding his or her medical condition, including whether or not such person is HIV positive or has contracted the AIDS virus.  Doe v. City of New York, et al., 15 F.3d 264, ___ (2d Cir. 1994); Doe v. Coughlin, 697 F.Supp. 1234, 1237 (N.D.N.Y. 1988) (recognizing that even family members may abandon the person and the discrimination accompanying such public dissemination may cause innumerable problems).

Additionally, at least in Connecticut, an individual also has a statutory right to privacy of such information except under the specific circumstances and conditions provided in relevant the statutes.

Chapter 368x of the Connecticut General Statutes sets forth a detail regime for, inter alia, protection and limited disclosure of HIV or AIDS related information regarding a person.

Connecticut General Statutes, Section 19a-583 sets for "[l]imitations on disclosure of HIV-related information."   None the circumstances for authorized disclosure set forth in that statute were present in this instance.   [A copy of the statute is appended hereto.]

Connecticut General Statutes, Section 19a-584(a) authorizes only "[a] public health officer," as defined in subsection (c) of the statute, to "inform or warn partners of an individual that they may have been exposed to HIV," and then only in specific circumstances and under specific conditions.

None of the individual defendants in this lawsuit is a "public health officer," nor were any of the specific statutory circumstances present or the specific statutory conditions present.

Connecticut General Statutes, Section 19a-584(b) authorizes only "[a] physician" to "warn or inform  a known partner of a protected individual," as that term is defined in Section 19a-581(7) of the Statutes, then only in specific circumstances and under specific conditions, or "may disclose confidential HIV-related information to a public health officer for the purpose of informing or warning partners of the protected individual that they may hae been exposed to HIV" under specific conditions.

-14-

Additionally, Connecticut General Statutes, Section 19a-590 expressly provides a State law private cause of action for injuries caused by anyone who "willfully violates" those laws.   In this context "willful" requires only "a knowing disclosure of confidential HIV-related information."  Doe v. Marselle, et al., 236 Conn. 845, 860, 675 A.2d 835, 842 (1996).

None of the individual defendants in this lawsuit is a "physician," nor were any of the specific statutory circumstances present or the specific statutory conditions present.

Connecticut General Statutes, Section 19a-585 also provides strict requirements when "confidential HIV-related information is disclosed."   Even perchance that any of the individual defendants was authorized to disclose such alleged information about Mr. Salatto, none of those requirements was followed.

None of the circumstances presented in this case fit within any exception to nondisclosure.

Nor could the individual defendants rely on the defense of immunity, absolute or qualified.   Contrast, Barese v. Clark, 1999 WL 7134878 (Conn. Super.), where the disclosure was made by a State Court prosecutor at a criminal case sentencing and in circumstances justifying the prosecutor's absolute immunity.

Given the foregoing statutes, initially enacted in 1989, and the referenced federal court rulings since the late 1980's and early 1990's, the individual defendants cannot fairly claim either that (1) other reasonable police officers

-15-

could have made the same mistake, or (2) that the relevant law was not "clearly established" at the time, the criteria for the defense of qualified immunity for a federal constitutional violation. [The relevant law of qualified immunity is discussed in greater detail, infra.]

Intentional Infliction of Emotional Distress – as to statements of HIV Positive or AIDS.

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Frank DeLaurentis vs. City of New Haven, et al., 220 Conn. 225, 266-67, 597 A.2d 807 (1991)(internal quotion marks omitted); Petyan vs. Ellis, 200 Conn. 243, 253, 254 n.5, 510 A.2d 1337 (1986).

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  1 Restatement (Second), torts Sec. 46, comment (d), p. 73 (1965).  **8**

---

**8**   In order for the plaintiff to prevail on her claim of Intentional Infliction of Emotional Distress she must prove four elements.  First, the plaintiffs must prove that the defendant intended to inflict emotional distress, or that the defendant

(footnote continued. . .)

Communicating to another person that Mr. Salatto is HIV positive or has the AIDS virus, particularly when such a communication is false and in direct violation of a statutory mandate and even the barebones Police Department guidelines, is certain outrageous.

The legislative history of the referenced Connecticut statute limiting disclosure of such information sets forth in great detail the reasons for the statute including the "widespread discrimination against the AIDS victim . . . ." Doe v. Marselle, et al., 236 Conn. 845, 852, 675 A.2d 835, 839 (1996) (internal quotations omitted).

Negligent infliction of emotional distress – as to statements of HIV Positive or AIDS.

One may be liable for negligent (unintentional) infliction of emotional distress if the defendant knew or should have known that his conduct involved an

_____

(. . . footnote continued)

knew or should have known that emotional distress was a likely result of his conduct. Second, the plaintiffs must prove that the conduct of the defendant was exteme and outrageous. Third, the plaintiffs must prove that the defendant's conduct was the cause of the plaintiff's distress. Fourth, the plaintiffs must prove that the emotional distress sustained by the plaintiffs was severe. Appleton v. Board of Education of the Town of Stonington, et al., 254 Conn. 205, 210-211, 757 A.2d 1059 (2000). In contrast, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for  an action based upon intentional infliction of emotional distress." Mellaly v. Eastman Kodak Co., 42 Conn.Supp. 17, 19, 597 A.2d 846 (1991).

unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.    Morris v. Hartford Courant Company, 200 Conn. 676, 513 A.2d 66 (1986); Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978).

Again, the likelihood that extreme emotional distress, of the type that might result in illness or bodily harm, should be foreseen by an officer communicating to another person that Mr. Salatto is HIV positive or has the AIDS virus, particularly when such a communication is false and in direct violation of a statutory mandate,

Slander or Libel – as to statements of HIV Positive or AIDS.

In Connecticut, "[c]harging a person with an existing loathsome, contagious disease" constitutes slander per se.  Wright, Fitzgerald & Ankerman,Connecticut Law of Torts, Third Edition, at page 412, citing Prosser and Keeton on Torts (5th Ed.), Section 112.

In Connecticut libel per se is an issue of law for the Court and must be determined from the face of the publication itself.    Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, supra, at page 408, citing Lega Siciliana Social Club, Inc. v. St. Germaine, 77 Conn.App. 846, 825 A.2d 827 (2003), cert. denied, 267 Conn. 901, 838 A.2d 210 (2003); Proto v. Bridgeport Herald Corp., 136 Conn. 557, 565, 72 A.2d 820 (1950), Charles Parker Company v. Silver City Crystal Co., 142 Conn. 605, 116 A.2d 440 (1955). The written imputation of what many would consider a loathsome condition such

-18-

as being HIV positive or having the AIDS virus is certainly such a libel per se. The instance of such writing in this case is not privileged under the specific statutes that govern the disclosure of such information, cited above.

Common law invasion of privacy -- as to statements of HIV Positive or AIDS.

"A tort action will lie in Connecticut for an invasion of the right of privacy, . .. . The right to privacy is invaded if a person unreasonably and seriously interferes with another's interest in not having his affairs known to others . . . . Liability exits if the conduct was such that the doer would have realized that it would be offensive to persons of ordinary sensibilities. . . ." Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, supra, at page 444-445, citing, inter alia, Goodrich v. Waterbury-Republican, 188 Conn. 107, 448 A.2d 1317 (1982); Bennett v. Connecticut Hospice, Inc., 56 Conn. 134, 138, 741 A.2d 349 (1999), Korn v. Rennison, 21 Conn. Sup. 400, 403, 404, 156 A.2d 476 (1959).

Again, the federal cases cited above regarding the constitutional right to privacy applied to disclosure of allegations concerning one's allegedly being HIV positive or suffering from the AIDS virus manifestly recognize the very consequences of such unauthorized disclosure.

The fact that Mr. Salatto is not HIV positive and does not have the AIDS virus heightens this particular violation.

Thus, one variation of invasion of privacy is called a "false light privacy claim."   Goodrich v. Waterbury Republican-American, 188 Conn. 107, 448 A.2d 1317 (1982).

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

[3 Restatement, Second (Torts), Section 652E.]

> . . . It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed.  It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false and so is placed before the public in a false position. . . .

[Comment b to Section 652E of the 3 Restatement, Second (Torts).]

Negligence -- as to statements of HIV Positive or AIDS.

Even if the defendants could demonstrate that the unauthorized disclosure of sensitive information such as that the plaintiff *might* be HIV positive or suffering from the AIDS virus, particularly when such is not true, was due to mere negligence, there is manifestly in such situation a reasonable foreseeability of harm to Mr. Salatto and therefore a valid claim for negligence.  Generally, see Collins v. City National Bank and Trust Company, 131 Conn. 167, 170, 38 A.2d 582 (1944).

The defendants' global response.

A key element in the defendants argument in Reply to our Supplemental Memorandum, in particular with respect to the claims of libel and slander but applicable and at the heart of all their claimed defenses, was that Mr. Salatto will have a hard time proving compensatory damages. [Defendants' Reply, at pages 8 - 9.]

That statement may prove true, although the defendants may simply be underestimating the decency of prospective jurors and transferring their own palpable contempt for Mr. Salatto to those prospective jurors.   We welcome the opportunity to  speak directly with the jurors.  But that defendants' contempt is not in any event a defense, meritorious or otherwise.

In fact, that argument merely further highlights what we argued in our Supplemental Memorandum, at page 33, that the defendants' "willful" defaults over the course of several years reflect, in part, a belief that Mr. Salatto will not make a sympathetic witness at a hearing in damages,

Denial of medical assistance – constitutional violation. (See other sections of this memorandum, infra, for state law violations for failure to provide medical care e.g., state law invasion of privacy and/or libel and/or slander, intentional infliction of emotional distress, negligent infliction of emotional distress.)

Mr. Salatto claims that in the course of being arrested and while in custody he suffered physical distress including, but not limited to, severe chest pains, tightening and clubbing and pressure within his chest, shortness of breath,

dizziness and vomiting.  [Amended Complaint, paragraphs 8 through 13.]  **9**

We acknowledge that, *if* true, the alleged facts set forth in the defendants'

Reply to our Supplemental Memorandum *might* establish a defense.

_____

**9**     ". . . The rights of one who has not been convicted are protected by the Due Process Clause; and while the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause [of the Fourteenth Amendment to the U. S. Constitution] to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner. . . . Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need. . . ." Weyant, et al. v. Okst, et al., supra, 101 F.3d 845, 856 (2d Cir. 1996) (citations omitted) (bracketed portion added).

" Deliberate indifference, in this context, may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. . . .   Thus, in order to establish deliberate indifference, a plaintiff must show 'something more than mere negligence'; but proof of intent is not required, for the deliberate-indifference standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.' . . . ."    Weyant, et al. v. Okst, et al., supra, 101 F.3d at 856 (2d Cir. 1996) (citations omitted).

The Weyant court then adopted an "objective standard, requiring determination of what the official knew or should have known. . ." in order to assess whether the defendant acted with "deliberate indifference." Weyant, et al. v. Okst, et al., supra, 101 F.3d at 856 (citations omitted).

The denial is one of substantive due process.  See County of Sacramento, et al. v. Lewis, et al., 523 U.S. 833, 834, 118 S.Ct. 1708, 140 L.Ed.2d 1043, (1998), citing in turn, Revere v. Massachusetts Gen. Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

<u>Failure to provide adequate security to prevent attempt at suicide. –
Constitutional violation, Intentional Infliction of Emotional Distress, Negligent
infliction of emotional distress, and Negligence.</u>

The Amended Complaint alleges that the defendants had "particular
knowledge, through their prior dealings with the plaintiff, that he was under the
care of a physician, on medication, and had been recently hospitalized for major
depression and a suicide attempt, . . . [yet] ignored clear and specific police
orders to dispossess him of his belt, necktie, and shoelaces while detained" . . .
and that "[u]timately, the plaintiff did, in fact, attempt suicide by hanging himself
with one or more of these items."  {Amended Complaint, paragraphs 15, 16.]

Even the Town of Branford officially recognizes an obligation to take
reasonable precautions to prevent the suicide of one taken into custody by tge
town's police officers.  But once again, broad and unjustified discretion is left to
nonmedical personnel both as to determining the need for such preventive steps
and in the steps to be taken.

Thus, General Order 99-1, in effect at the time of the November 2001
incidents in question but since superseded, provides only the following:

The denial is one of substantive due process.  See <u>County of Sacramento,
et al.</u> v. <u>Lewis, et al.</u>, 523 U.S. 833, 834, 118 S.Ct. 1708, 140 L.Ed.2d 1043,
(1998), citing in turn, <u>Revere</u> v. <u>Massachusetts Gen. Hospital</u>, 463 U.S. 239, 244,
103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

1.  Supervision of Detainees must be continuous.  When the
Department is housing any arrestee, the monitoring camera(s) shall
remain on.

> 2.  The Shift Commander shall, on an hourly basis visit, or cause a visit to detentin to personally judge the welfare of each detainee.
>
> . . .
>
> 6.  The Department Suicide Prevention Form shall be filled out for every detainee regardless of how brief the detention may be.  (The suicide prevention form is not an interview.  It is a questionnaire of information officers have received by history or intelligence from the investigation).
>
> 7.  The Suicide Prevention Form must be reviewed by the officer in charge.  Whenever he/she finds information to cause a prudent person to be concerned, he/she will take any steps necessary to prevent injury or the opportunity for injury to the detainee.

[General Order 99-1 of the Branford Police Department, respectively Sections II.D.1, 2, 6 and 7.]

Failing to provide the most basic of suicide prevention oversight, **10** and then not providing adequate care once such an attempt has occurred, is equally outrageous.

Failing to provide the most basic of suicide prevention oversight, and then not providing adequate care once such an attempt has occurred, is equally outrageous.

---

**10**    This issue also raises a claim of denial of substantive due process. However, there is a divergence as to whether the necessary standard of deliberate indifference is establish by objective or subjective evidence.  Liscio v. Warren, 901 F.2d 274, 2776-77 (2d Cir. 1990); Dinnerstein v. United States, 486 F.2d 34, 36 (2d Cir. 1973); Valentin v. Murphy, et al., 95 F.Supp.2d 99m 104 (D. Conn. 2000); Hanrahan v. City of Norwich, 959 F.Supp. 118, 122 (D.Conn. 1997); compared with  Weyant, et al. v. Okst, et al., supra, 101 F.3d at 856 (citations omitted).

Even if Mr. Salatto was able to attempt suicide due to the negligence of the defendants it is actionable.

Curiously, unless I have overlooked something, the defendants never even addressed this issue in their Reply to our August 25, 2006 Supplemental Memorandum.

Excessive force, assault, battery.    In our Supplemental Memorandum we acknowledge that the claims of excessive force, assault and battery usually raise factual issues, and that in this case those claims are relatively last in significance of wrongdoing and injury.  **11**

Supervisory liability – defendant Chief Gill and John Doe supervisor.  **12**

The allegations against defendants Gill and Grantland include their direct liability for failure to provide medical assistance (the Amended Complaint alleges that he was personally asked for assistance) and failure to adequately protect

------------------------------------------------------------

**11**     Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Martyn v. Donlin, 148 Conn. 27, 166 A.2d 856 (1961); Schmeltz v. Tracy, 119 Conn. 492, 495-96, 177 A. 520 (1935); Lentine v. McAvoy, 105 Conn. 528, 136 A. 76 (1927); Welch v. Durand, 36 Conn. 182, 184, (1869), although neither violence nor actual damage is necessary to constitute a battery.  See Criscuolo v. Shaheen, 46 Conn. Supp. 53, 736 A.2d 947 (1999), and Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Third Edition, at page 10.

**12**     The Second Circuit Court of Appeals has "long recognized that supervisors may be 'personally involved' in the constitutional torts of their supervisees if:  (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event. . . ."   Spencer v. Doe, et al., 139 F.3d 107, 112 (2d Cir. 1998) (citation omitted).

against a suicide attempt, as well as supervisory liability for such wrongs.

We acknowledge that the adequate involvement of those supervisors is subject to dispute.

Liability of the Town of Branford --  for civil rights violations and for State law violations.

In their Reply to our August 25, 2006 Supplemental Memorandum the defendants claimed conclusorily  that the plaintiff simply cannot demonstrate municipal liability.

In our Supplemental Memorandum we had set forth the standards for municipal liability, respectively for federal civil rights violations and for State law violations.

Federal. A municipality is liable for a constitutional violation and certain federal law violations by one of its employees or officials if there is proof of a "deliberate disregard" of a known defect in town training, supervision or other conduct of the type at issue.   Hunter v. Bryant, 502 U.S. 224, ___, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991).

Such municipality liability for a constitutional violation may be demonstrated where there is proof of a municipal policy, or a municipal custom such as an affirmative practice or tacitly, by a knowing tolerance of such wrongdoing. of violating a citizens rights. City of Canton, Ohio v. Harris, et al.,

-26-

489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).   In some circumstances such a policy or custom may also be demonstrated by a single instance of such misconduct.   Board of the County Commissioners of Bryan County v. Brown, et al., 520 U.S. ___, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); City of Canton, Ohio v. Harris, et al., 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Qualified immunity shields government officials who reasonably but mistakenly conclude that their conduct is lawful, either (1) because the law was not clear at the time the official acted, or (2) because other reasonable police officers in the defendant's position might have made the same mistake.   Hunter v. Bryant, 502 U.S. 224, ___, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

"Immunity ordinarily should be decided by the court. . . ."  Hunter v. Bryant, 502 U.S. 224, ___, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991).

Additionally, a municipality is not entitled to the defense of qualified immunity.

State law qualified immunity. Most of the acts and omissions of the officers about which the plaintiff complains did not involve the exercise of discretion on the part of the officers and neither the officers nor the town are entitled to governmental immunity.   Elliott v. Waterbury, 245 Conn. 385, 411, 715 A.2d 27 (1998).

Moreover, even if any of the acts or omissions at issue were deemed discretionary, the potential immunity is qualified and not available "first, where the

circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Spears v. Garcia, 263 Conn. 22, 36, 818 A.2d 37 (2003); Mulligan v. Rioux, et al., 229 Conn. 716, 727, 643 A.2d 1226 (1964); Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 167, 544 A.2d 1185 (1988).

There is sufficient evidence that the Town of Branford has violated both the plaintiff's civil rights, his State law statutory rights, and his State common law rights.

Despite the specific State statute and the clear Federal and State case law strictly limiting communications about the actual or potential HIV or AIDS status of an individual, including a prisoner, the Branford Police Department guidelines in effect at the time

The barebones Branford Police Department guidelines in effect at the time, and since expanded, set forth a few general statements about exposure to "infectious diseases," do not even refer to HIV status or the AIDS virus, and make no reference to or explanation of the precise State law statutory limits, discussed above, that apply to communications regarding HIV status or the AIDS virus. [See Branford Police Document concerning "Infectious Diseases," Exhbit No. 8 of Plaintiff's August 25, 2006 "Exhibits Filed in Support of Supplemental

Memorandum in Support of Opposition to Motion to Vacate Default Judgments, and Related Exhibits," which is incorporated herein by reference.]


Respectfully submitted,


_____/S/
MARTIN S. ECHTER
Federal Bar No. ct07596
Law Office of Patricia A. Cofrancesco
89 Kimberly Avenue
East Haven, CT 06512
Phone: (203) 467-6003
Fax: (203) 467-6004
E-Mail: pattycofrancescoatsbcglobal.net


Certificate of Service

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and MAILED, POSTAGE PREPAID, to:

Attorney John J. Radshaw, III, Howd & Ludorf, LLC,
65 Wethersfield Avenue, Hartford, Ct 06114

this _____ day of October, 2006.


_____
        Martin S. Echter


-29-