UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT F. SALATTO, *PRO SE*, | |
| *Plaintiff,* | Civil Action No. |
| v. | 3:02 CV 0230 (EBB) (JGM) |
| TOWN OF BRANFORD, ET AL., | |
| *Defendants.* | NOVEMBER 29, 2006 |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE'S RECOMMENDED RULING

The defendants, TOWN OF BRANFORD; ROBERT GILL, Chief of Police; PATRICK O'MALLEY, Patrol Officer; DAVID ATKINSON, Patrol Officer; and JOHN DOE, Shift Supervisor, submit the following memorandum in opposition to the plaintiff's objection to the magistrate's recommended ruling. For the reasons that follow, the court should adopt the recommended ruling.

The plaintiff makes essentially two arguments on brief – the defendants cannot supplement their motion for reconsideration and that no meritorious defenses were presented. The first argument should be summarily rejected – the plaintiff filed a supplemental memorandum in opposition to the defendants' motion for reconsideration and the defendants were entitled to respond. The plaintiff's argument suggests that he gets the last word on the subject after obtaining counsel and the defendants are not permitted to respond. That is simply wrong.

As to the question of meritorious defenses, the defendants plead special defenses in prior answers and the plaintiff (and his current counsel) have notice of such defenses. Furthermore, the well-reasoned decision of Magistrate Margolis appropriately balanced the factors in opening the default. While the defendants disagree with the amount of attorney's fees sought by plaintiff's counsel and address that separately, they understand Magistrate Margolis' reasoning and have not challenged that ruling.

It bears repeating that as to the "good cause" inquiry in the context of Rules 55(c) and 60(b), the default was not willful; setting aside the default will not prejudice the plaintiff; and meritorious defenses are presented. The question of willfulness is not complicated – neither the defendants nor their counsel intended for the default to enter. This is not the question of default entry after a party refuses to testify, disclose documents or participate in a deposition or settlement conference. The circumstances were inadvertent and amount to excusable neglect. In opposition, plaintiff characterizes the entire history of this case as evidence that any problem with pleading was not inadvertent. Despite the best-designed systems, procedures or processes, mistakes can happen and they did in this case. The present default was entirely inadvertent. Counsel for the defendants has appearances in many federal cases and despite his best efforts, this did not get caught by a procedural safety net. The plaintiff's supplemental memorandum does not establish the sort of bad faith contemplated by *Brian v Kullaman Industries, Inc.*, 71 F.3d 1073 (2d Cir. 1995) and plaintiff does not establish (or argue) any prejudice on his part. See *American Alliance Insurance Co., Ltd.* 92 F.3d 57, 60 (2d Cir. 1996).

Of significant importance, setting aside the default will not prejudice the plaintiff. For several months, the plaintiff had been a fugitive from justice. In his *pro se* status, he would have been subject to arrest at the courthouse. During his escape, he has retained counsel, and he will suffer no prejudice as a result. He wants his day in court. Plaintiff does not claim prejudice on brief and could not establish prejudice if he did.

Moreover, and despite the plaintiff's contentions, meritorious defenses are presented and his argument on brief misapprehends the inquiry. In opposition, the plaintiff claims that the defendants do not have "meritorious defenses." Plaintiff does not properly characterize what is a "meritorious defense" or when such a defense is lacking. For example, in an action on a debt for goods sold, the defendant would not have a meritorious defense if he admitted that he contracted for purchase of goods, took possession, used/consumed the goods and failed to pay. There is no question that the defendant in the hypothetical action on a debt does not have a meritorious defense.

In contrast, the defendants in the present case have many defenses, and such is apparent once the history prior to this case is known and understood. The plaintiff is recognized in Branford by his two greatest vices: IV drug use and habitual shoplifting. At the time the initial complaint was filed, he was incarcerated because his parole was revoked. His status was a direct result of his arrest on November 15, 2001, an event that forms the basis of the present complaint. His present incarceration is a result of flight in a motor vehicle. He was wanted for escape at the time he was most recently arrested.

On November 2, 2001, Salatto and his "erstwhile finance," Karen Holmes, were

arrested by Officer O'Malley for shoplifting at Shoreline Wine & Spirits in Branford. Not only was Salatto arrested for shoplifting liquor from Shoreline Wine & Spirits, but once back at headquarters, an inventory of their possession revealed coupons and clothing with the price tags still attached as shoplifted from Olympia Sports. Salatto was later arrested for this crime as well. Following processing and imposition of a $5,000 non-surety bond, Salatto complained of "chest pains" and was transported to Yale-New Haven Hospital for treatment.

Two weeks later, Salatto was arrested again for shoplifting. On November 15, 2001, Salatto was arrested by Officers Atkinson and O'Malley. Salatto and Holmes stole a variety of items from CVS. Holmes was later taken into custody after store employees identified her and gave a description of Salatto. After an attempt to elude the police, Salatto was taken into custody. Following being processed on the crimes, Salatto was placed in the lock-up. Salatto used his one phone call to contact his father. Apparently, he claimed to tell his father that he was suffering chest pains. His father later called the Department and complained that Salatto should be taken to the hospital. Notably, Salatto called his father before hiding from the police that day and his father "coincidentally" appeared at the site of his arrest in Branford.

Based on many prior arrests in Branford, it should be noted that Salatto's modus operandi is to ask for medical care when he thinks he is being locked up. The medical issues are never substantiated and the Department leaves him in the custody of the hospital and released on a high-amount, non-surety bond. While in custody for the November 15, 2001 arrest, an order of remand was received from Salatto's parole

officer, Officers Atkinson and O'Malley transferred Salatto to nearest correctional facility. At this point, Salatto claims he was subject to excessive force. During the transfer, a prison transfer form was completed and the officers indicated that Salatto was HIV positive based on what Salatto had told them in the past.

With regard to the claim that Salatto's rights were violated when he was denied medical care, the Substantive Due Process clause of the Fourteenth Amendment addresses these claims concerning a denial of medical care. More importantly, it is not just the denial of medical care, in order for the plaintiff to prevail over the officer's qualified immunity; the plaintiff would have to prove that the officers were deliberately indifference to his serious medical needs. Evidence exists that the plaintiff has no serious medical needs other than his drug addiction. Additionally, when the plaintiff complained of "chest pain," the officers summoned the Fire Department who gave him a clean bill of health. Moreover, the record will demonstrate that Salatto is the proverbial boy who cried wolf, always claiming a "medical problem" to avoid the lock-up. The defendants are entitled to prove these defenses.

With regard to the claim that the defendant officers utilized excessive force in violation of his federal constitutional rights, the examination of this claim turns on the reasonableness of the officers' actions. The Fourth Amendment to the United States Constitution protects citizens against the use of excessive force during arrest and during pretrial confinement. However, a police officer has qualified immunity if it is objectively reasonable for the police officer to believe that his actions did not violate the individual's constitutional rights. The question is whether the officer's actions are objectively

reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's actions may be found to be reasonable even where officers of reasonable competence could disagree on the proper response to a situation. *Malley v. Briggs*, 475 US 335 (1986). Salatto resisted every effort to be transported to NHCC and attempted to injury himself on several occasions. We believe that the evidence will reveal that Salatto did not suffer any injuries whatsoever. We believe that Salatto cannot adduce objective evidence other than his self-serving statements that he was subject to any excessive force. While the plaintiff's account of the event may differ from that of the defendants, that is a meritorious defense.

With regard to Salatto's claims against Chief Robert Gill and the Town of Branford, the plaintiff will not prevail on these claims. While the plaintiff identifies Chief Gill and the Town of Branford as responsible for the actions of Atkinson, O'Malley and Doe, the plaintiff has not alleged a viable claim based on the doctrine articulated in *Monell v. Depart. of Soc. Servs.*, 436 U.S. 658 (1978). A municipality is liable for a deprivation of constitutional rights was inflicted on the plaintiff in accordance with a policy, practice, custom or act of a final decision-maker. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Monell, supra; Gottlieb v. County of Orange*, 84 F.3d 511 (2d Cir. 1996); *Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995); *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993). This doctrine is completely different from the common-law doctrine of respondeat superior. Respondeat superior does not apply to § 1983 claims. If a municipal official acting under color of state law acts on behalf of the municipality in a manner that deprives a plaintiff of a federally-protected right, the

municipality is not liable simply because it has entrusted authority to the individual official; rather, as the Supreme Court ruled unequivocally in *Monell* and its progeny, a municipality is liable only if the deprivation was imposed by the application of a policy adopted by those responsible for enacting the municipality's official policies, practices and customs. Also, it is not just the existence of some policy, practice or custom. Rather, the policy, practice or custom must both proximately cause the complained-of injury and it must be foreseeable near to a moral certainty that such injury would occur in the absence or because of such policy, practice or custom. In the present case, Salatto merely mentions that Chief Gill is responsible for Atkinson, O'Malley and Doe. While Salatto makes a number of conclusory allegations about Chief Gill's obligations to maintain a well-trained staff, that he is responsible for the oversight and management of the department, and that he is responsible for the overall proficiency of all of the officers under his command, these allegations do not establish any sort of Monell liability. Rather, these are the sort of claims that establish a respondeat superior claim. As discussed above, this theory does not apply to incur federal constitutional liability and the defendants are entitled to put on a defense of these claims.

With regard to state law claims, Salatto has a mix of theories, alleging both intentional and negligence torts. The complaint alleges a mixture of the following: assault, battery, defamation, negligence, intentional infliction of emotional distress, and slander. In addition to these theories, Salatto also claims that he as suffered a violation of his state constitutional rights in that he has been "punish[ed] in a manner other than warranted by law" in violation of Article First, Section 9.

With regard to the plaintiff's defamation claims, the plaintiff will have a significant hurdle to prove these claims. An indispensable element of an action of slander is injury to the reputation of the person defamed. *Urban v. Hartford Gas Co.*, 139 Conn. 301, 308, 93 A.2d 292 (1952). Slander is "actionable per se" where the utterance charges a crime involving moral turpitude or to which an infamous penalty is attached. *Moriarty v. Lippe*, 162 Conn. 371, 383, 294 A.2d 326 (1972). To the extent they are not protected by governmental immunity, the defendants had a qualified privilege to communicate to Holmes or to CT Department of Correction the information that was open and obvious to them: the track marks on Salatto from his IV drug use, and the information Salatto used to avoid incarceration, claiming to be HIV positive or on such medication.. It is obvious to any adult that IV drug use with needles carries with it the risk of HIV and AIDs. Thus, a conditional or qualified privilege may be recognized only where the statement is made in good faith, without malice, in an honest belief in the truth of the statement, and in discharge of a public or private duty. The officer made these statements to Holmes to get information about Salatto's crimes. They believe the statements to be true in that Salatto is the one claiming to be infected and Salatto was a notorious IV drug user. As discussed above concerning damages, we will have the opportunity to bring forward all of the details of Salatto's past should this issue reach a jury.

With regard to any potential damages for defamation or slander, should Salatto prevail, "[n]ominal damages are awarded when the insignificant character of the defamatory matter, or the plaintiff's bad character, leads the jury to believe that no substantial harm has been done to his reputation, and there is no proof that serious

harm has resulted from the defendant's attack upon the plaintiff's character and reputation." 3 RESTATEMENT (SECOND), TORTS, § 620, comment (a) (1977); see, e.g., Walkon Carpet Corp. v. Klapprodt, 89 S.D. 172, 178, 231 N.W.2d 370 (1975) (upholding award of $1 after finding that defendant told others plaintiff was crook, had stolen carpet, belonged in penitentiary, drank to excess, was sexually promiscuous, but also finding that poor reputation of plaintiff not materially damaged by those statements). Thus, the fact that Salatto has been in and out of jail over the last 10 years, has multiple arrests, multiple felony convictions and his a know IV drug user, we can only speculate whether the claimed defamatory statements will have any affect on his reputation and the defendants are entitled to put these issues to a jury.

With regard to the claim that Salatto claims he suffered the intentional infliction of emotional distress, the plaintiff must establish "four elements . . . It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court." *Ancona v. Manafort Bros., Inc.*, 56 Conn. App. 701, 712, 746 A.2d 184, cert. denied, 252 Conn. 954, 749 A.2d 1202 (2000). Based on our investigation, we doubt that Salatto can establish any of these elements. Plaintiff has no evidence that he has even treated for

this claimed distress. Furthermore, Salatto cannot recover for emotional distress based on conduct he did not witness. The fact that the officers may have told Holmes that Salatto has AIDS or is HIV positive to his finance Holmes does not satisfy the elements. Accordingly, the defendants are entitled to establish defenses to this claim.

With regard to the state constitutional claim, the plaintiff alleges he was "punish[ed] in a manner other than warranted by law" in violation of Article First, Section 9. Connecticut courts have only recognized yet established a cause of action on this specific section, in this regard. The Supreme Court of Connecticut has only recently recognized the existence of a cause of action under Article First, sections 7 and 9 under one specific set of facts. *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998); see also *ATC Partnership v. Town of Windham*, 251 Conn. 597, 741 A.2d 305 (1999). The court specifically cautioned any further consideration of a state constitutional cause of action to case-by-case determinations only. To that end, we certainly doubt that the court would consider adopting the present facts to recognize another instance as recognized in *Binette*. Even if the court did so find, we would argue that any such state constitutional claim would necessary have an accompanying doctrine of qualified immunity.

In conclusion, the defendants have established good cause to set aside the default. It is undisputed that (1) the default was not willful; (2) the plaintiff will not suffer any prejudice; and (3) many meritorious defenses are presented. See *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993). In this case, the balance between clearing the court's calendar and affording litigants a reasonable chance to be heard should tip in

favor of a full and fair litigation of this case and the entry of default would bring about a harsh or unfair result.

WHEREFORE, the defendants pray that their objection is sustained and the recommended ruling is adopted.

> THE DEFENDANTS,
> TOWN OF BRANFORD; ROBERT GILL, Chief of Police; PATRICK O'MALLEY, Patrol Officer; DAVID ATKINSON, Patrol Officer; and JOHN DOE, Shift Supervisor
>
> /s/ John J. Radshaw III
> John J. Radshaw III, ct19882
> HOWD & LUDORF
> 65 Wethersfield Avenue
> Hartford, CT 06114
> (860) 249-1361
> (860) 249-7665 (fax)

## CERTIFICATION

I hereby certify that on November 29, 2006, a copy of foregoing was served by U.S. Mail, postage pre-paid to all *pro se* parties and counsel of record.

Martin S. Echter
Law Office of Patricia Cofrancesco
89 Kimberly Ave.
East Haven, CT 06512

/s/ John J. Radshaw III
John J. Radshaw III